BEAVER EXCAVATING COMPANY, Appellant,

v.

PERRY TOWNSHIP et al., Appellees.

[Cite as *Beaver Excavating Co. v. Perry Twp.* (1992), 79 Ohio App.3d 148.]

Court of Appeals of Ohio,
Stark County.

No. CA–8847.

Decided July 27, 1992.

*Ross & Robertson, James T. Robertson* and *John C. Ross,* for appellant.

*Black, McCuskey, Souers & Arbaugh, Thomas W. Connors* and *Robert E. Soles, Jr.,* for appellees.

MILLIGAN, Judge.

On December 19, 1991, the Stark County Common Pleas Court awarded a judgment against attorney Joseph M. Zeglen and attorney Edwin Davila, jointly and severally, in favor of Michael and Diane Finsel in an amount of $7,766.48. On December 24, 1991, one of the judgment debtors, Joseph M. Zeglen ("appellant"), filed his notice of appeal from said judgment.[1]

Zeglen assigns the following errors:

---

**1.** Edwin Davila filed no appeal.

### Assignment of Error No. 1

"The trial court erred by holding non-parties Mike and Diane Finsel are permitted to seek attorney's fees under Ohio Rev.Code § 2323.51, which permits only parties to an action to recover attorney's fees."

### Assignment of Error No. II

"The trial court erred by holding the motion for order to show cause filed by attorneys Joseph M. Zeglen and Edwin Davila constituted a civil action as contemplated by Ohio Rev.Code § 2323.51."

### Assignment of Error No. III

"The trial court erred by holding the finding by the disciplinary counsel of the Ohio Supreme Court that there was not a violation of the code of professional responsibility is not *res judicata* as to the frivolous conduct motion filed by Finsels."

### Assignment of Error No. IV

"The trial court erred by holding Ohio Rev.Code § 2323.51 allows a court to award attorney's fees after the expiration of the twenty-one-day limitation if the motion was filed at any time within the twenty-one-day period."

### Assignment of Error No. V

"The trial court erred by holding the motion for an order to show cause filed by attorneys Joseph M. Zeglen and Edwin Davila against the Finsels served merely to harass the Finsels for purpose of causing them to discontinue their anti-zone change activities."

### Assignment of Error No. VI

"The trial court erred by holding the motion for an order to show cause filed by attorneys Joseph M. Zeglen and Edwin Davila against the Finsels was not warranted under existing law and/or could not be supported by a good faith argument for an extension, modification, or reversal of existing law."

The issues presented by this appeal are tangential to a protracted zoning contest involving the Beaver Excavating Company, a landowner seeking to rezone its Perry Township Property, Perry Township and its trustees, West Manor Improvement Association, Inc., a neighborhood allotment organization, and Michael and Diane Finsel. At all times relevant Diane Finsel was a vice-president of West Manor and Michael Finsel was a trustee.

The launch pad litigation was an action by Beaver seeking a declaratory judgment in the Stark County Common Pleas Court that the zoning restrictions imposed upon its property in Perry Township were unconstitutional and

unlawful. In that action, West Manor moved to intervene on December 22, 1988.

Intervention was contested and prior to a ruling the case was settled and dismissed on July 31, 1989.

The gist of this settlement agreement was that the trustees would unanimously approve Beaver's application to rezone certain property, applicants ("West Manor") agreed not to oppose the changes in any manner, and Beaver agreed to land use restrictions.

The agreement facially identifies Michael and Diane Finsel as parties. Notwithstanding the agreement had signature lines for the Finsels to execute the agreement, they did not sign, either in an individual capacity or as representatives of West Manor.

After the case was dismissed, the Finsels appeared before the zoning commission and the trustees, and personally spoke against the zone change being sought by Beaver.

On October 16, 1989, Zeglen and Davila, on behalf of Beaver, filed a motion to enforce the settlement agreement and a motion for an order requiring West Manor, the Finsels, the board of trustees, and Homes to appear and show cause why they should not be held in contempt for violating the settlement agreement. The motion was supported by a ten-page memorandum.

On January 12, 1990, the Finsels were granted leave to file a motion for dismissal as non-parties and on February 2, 1990, the motion was sustained.

On February 22, 1990, Beaver's motion to enforce the settlement was sustained.

On February 23, 1990, the Finsels' motion for an award of reasonable attorney fees was filed; plaintiff's memorandum in opposition was filed March 12, 1990; and notice to take depositions of the Finsels and attorney Barnhart filed April 3, 1990.

Following substantial pre-hearing discovery and hearing, the Finsels' motion for reasonable attorney fees was granted by the trial court on December 19, 1991. It is from this judgment Zeglen appeals.

The trial judge executed an opinion in narrative fashion in which he chronicles the events surrounding the controversy and supporting his factual conclusion of frivolous conduct as to the Finsels by Zeglen and Davila, and his law conclusions. (See Appendix.)

We have examined the record and find the findings of the trial court to be supported by substantial, competent, credible evidence, and incorporate that opinion as part of our opinion.

We overrule the assignments of error and affirm the judgment of the trial court.

## I

R.C. 2323.51, the statute authorizing an award of attorney fees for frivolous conduct, provides:

"(A) As used in this section:

"(1) 'Conduct' means filing a civil action, asserting a claim, defense, or other position in connection with a civil action, or taking any other action in connection with a civil action.

"(2) 'Frivolous conduct' means conduct of a party to a civil action or of his counsel of record that satisfies either of the following:

"(a) It obviously serves merely to harass or maliciously injure another party to the civil action;

"(b) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.

"(B)(1) Subject to divisions (B)(2) and (3), (C), and (D), of this section, at any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment in a civil action, the court may award reasonable attorney's fees to any party to that action adversely affected by frivolous conduct. The award may be assessed as provided in division (B)(4) of this section."

█ Appellant first argues that the Finsels are not parties to the action within the contemplation of R.C. 2323.51.

We conclude that by its initiative Beaver itself made the Finsels parties to the contempt proceedings. Although they remain non-parties to the primary litigation, they are clearly parties confronted with legal sanction in the special contempt proceedings.

We conclude that by its own action Beaver brought the Finsels within the reach of R.C. 2323.51.

The first assignment of error is overruled.

## II

Next, Zeglen argues that the Finsels are not parties to a civil action within the contemplation of R.C. 2323.51.

A civil action is defined in R.C. 2307.01 as:

"An action is an ordinary proceeding in a court of justice, involving process, pleadings, and ending in a judgment or decree, by which a party prosecutes another for the redress of a legal wrong, enforcement of a legal right, or the punishment of a public offense."

It was the initiative of Beaver that vested upon the Finsels the legal right to a hearing upon the contempt charges, R.C. 2705.03, the procedural trappings that are attendant thereto, *In re Oliver* (1948), 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682, and the right of appeal in the event of an adverse contempt judgment, R.C. 2705.09.

■ We conclude that for the purposes of implementation of R.C. 2323.51, contempt proceedings against a non-party witness constitute à civil action. The cases cited by appellant are distinguishable and inapposite.

The second assignment of error is overruled.

### III

■ Appellant argues that issue preclusion principles deny access to the frivolous conduct statute herein employed. He relies upon a finding by Disciplinary Counsel to the Ohio Supreme Court. What he neglects to advise is that Disciplinary Counsel did not resolve an issue adverse to the Finsels. In fact, Disciplinary Counsel simply advised that the process would not become involved when litigation is pending, and advised Finsels to apply for disciplinary follow-up if the trial court found wrongdoing by Zeglen and Davila.

The *res judicata* argument is disingenuous.

The third assignment of error is overruled.

### IV

On February 2, 1990, the court sustained the motion of the Finsels to dismiss the show-cause contempt proceedings.

Twenty-one days thereafter, February 23, 1990, the Finsels filed their motion for attorney fees.

On March 12, 1990, the plaintiffs filed a memorandum in opposition and on March 20, 1990, assignment of hearing was made.

On April 3, 1990, the plaintiffs filed notice of intent to take depositions of the Finsels and attorney Gene Barnhart.

On July 3, 1991, the plaintiffs filed a supplementary memorandum in opposition.

Between that date and the December 1991 judgment, sundry process was invoked by both parties.

■ This assignment challenges the issuance of an attorney's fee award beyond twenty-one days of the entry of judgment, notwithstanding the motion was filed within said twenty-one days. R.C. 2323.51(B)(1) provides:

"Subject to divisions (B)(2) and (3), (C), and (D) of this section, at any time prior to the commencement of the trial in a civil action *or within twenty-one days after the entry of judgment in a civil action, the court may award reasonable attorney's fees to any party to that action adversely affected by frivolous conduct.*" (Emphasis added.)

The "divisions" contemplate fixing a date for hearing, issuing notice of the hearing to all affected parties, conducting a hearing at which parties may present relevant evidence, including itemized legal services, and a determination that the conduct was frivolous and did adversely affect the claimant, and a determination of the amount of fees to be ordered and the liable party. R.C. 2323.51(B)(2).

We conclude, as did the court in *Edinger v. DeRail, Inc.* (Apr. 12, 1991), Lucas App. No. L–90–158, unreported, 1991 WL 53777, by *dictum*, that the legislation contemplates timely request for fees, not completion of the court's task, within that twenty-one-day period.

On June 20, 1991, appellant requested a continuance for the purpose of completing discovery and to determine whether the twenty-one-day requirement was applicable to prevent an award.

We conclude, as did the court in *Edinger*, that the twenty-one-day requirement is in the nature of a statute of limitations, requiring the process to be commenced within the brief three-week period.

The fourth assignment of error is overruled.

## V

■ Appellant essentially challenges here the weight, sufficiency, and credibility of evidence to demonstrate frivolous conduct within the reach of R.C. 2323.51(A)(2).

The trial court found the conduct not only harassed the Finsels but was also unwarranted under existing law and insupportable by any good faith argument for modification.

The testimony supports the trial court's finding that appellant knew up front, at the time the agreement was executed, that the Finsels not only refused to sign the agreement but intended to continue to oppose the zone change. Notwithstanding that clear communication, Zeglen authorized the execution of the settlement agreement by others and consented to the dismissal of the case with prejudice.

The trial court did not abuse its discretion in finding frivolous conduct and awarding fees.

■ Appellant's concern about the "chilling effect" of such an award is misplaced. Of course the statute should be applied with great care. But it may be used to quash the "chilling effect" of the misuse of power by an attorney in the course of litigation.

Here, the evidence abundantly supports the trial court's conclusion that the latter purpose is served.

The fifth assignment of error is overruled.

## VI

Appellant's final assignment of error challenges the conclusion that a finding of frivolous conduct is not warranted because appellant had a good faith argument for an extension, modification, or reversal of existing law. R.C. 2323.51(A)(2)(b).

The trial court did not err when it concluded that, upon the peculiar facts of this case, appellant has no good faith argument. His reliance upon *Wilson v. United States* (1911), 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, is misplaced. Here, we have no corporate disobedience of any lawful command by persons acting in a corporate capacity. In fact, Zeglen was advised up front that the Finsels were not parties to the agreement and would not be bound by any agreement of the corporation; further, none of the action taken by the Finsels was in a representative capacity.

Upon the authority of *Hall's Safe Co. v. Herring–Hall–Marvin Safe Co.* (C.A.6, 1906), 146 F. 37, we overrule the assignment of error.

The several assignments of error are overruled and the judgment of the Stark County Common Pleas Court is affirmed.

*Judgment affirmed.*

GWIN, P.J., and SMART, J., concur.

Appendix

JAMES R. UNGER, Judge.

The motion of nonparties Michael and Diane Finsel for an award of reasonable attorney fees against Joseph M. Zeglen and Edwin Davila, attorneys for plaintiff Beaver Excavating Company ("Beaver"), is sustained. Such motion was filed on February 23, 1990 based upon allegations of frivolous conduct pursuant to R.C. 2323.51(A)(2), in which frivolous conduct is defined as follows:

" 'Frivolous conduct' means conduct of a party to a civil action or of his counsel of record that satisfies either of the following:

"(a) It obviously serves merely to harass or maliciously injure another party to the civil action;

"(b) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law."

This court, in its opinion and entry filed August 2, 1991, overruled Beaver's motion to strike the Finsels' motion based upon various technical grounds.

The underlying action herein was Beaver's suit against the Perry Township Trustees ("Perry") for a judgment declaring Perry's zoning resolution unconstitutional as to its restrictions against Beaver's proposed industrial use of Beaver's property. This suit, filed November 18, 1988, was dismissed by the court on July 31, 1989 after a settlement had been reached on July 11, 1989. In its order of dismissal, the court ordered "that any and all releases, agreements, or journal entries necessary to comply with the settlement shall be executed by all the interested parties." Finsels were neither parties to the suit nor parties to the agreement.

Prior to the execution of the settlement agreement, the West Manor Improvement Association, Inc. of Canton, Ohio ("West Manor") and various individuals, including the Finsels, had applied for permission of the court to be joined as parties in the suit. They opposed Beaver's zoning objectives. In the ultimate settlement agreement, these opponents were referred to as the "applicants." Before the court had an opportunity to rule on these applications for joinder coincidental with the execution of the settlement agreement, the applicants signed proposed entries withdrawing their applications. These entries were also signed by attorney Zeglen and attorney Taryn Heath, representing the Finsels. Inadvertently, the entries were never presented to the court and were not filed.

The settlement agreement was signed by West Manor, through its president. While signature lines had been placed on the settlement agreement for the Finsels and other applicants, the Finsels and certain other applicants refused to sign it.

On July 20, 1989 and August 29, 1989, the Finsels appeared at the Perry Township Zoning Commission meeting and the Perry Township Board of Trustees meeting and spoke in their capacities as individuals, not in behalf of West Manor, against the zoning change being sought by Beaver.

On July 28, 1989, attorney Zeglen wrote a letter in behalf of Beaver to attorney Taryn Heath, who then represented all of the applicants, objecting to

the Finsels' statements before the zoning commission. Zeglen wrote as follows:

"Diane Finsel * * * cannot sever her ties from West Manor and now attempt to oppose Beaver's current proposed zoning changes as an individual separate and apart from West Manor. This is evident in that Ms. Finsel is well known as an officer of West Manor and her continued actions will be construed, as they already have been, as the actions of West Manor. * * * "

Zeglen further suggested that Heath advise the Finsels to cease opposing the zoning changes or face the alternative of a motion to enforce settlement and a suit for damages.

On October 16, 1989, Beaver filed a motion to enforce settlement and a motion for non-parties Finsels to appear and show cause as to why they should not be punished for contempt of court for alleged violation of the court's order of July 31, 1989. The motion was signed by attorneys Zeglen and Davila in behalf of Beaver.

On October 17, 1989, attorney Gene Barnhart, on behalf of the Finsels, wrote letters to Zeglen and Davila pointing out that the Finsels had not executed the settlement agreement; that this was no oversight but a specific refusal to sign, and that the Finsels had so advised Heath; that the Finsels as individuals were not parties to the settlement agreement and could not be charged with a violation of same; and that if contempt proceedings were pursued against the Finsels they would be met with a frivolous-claim action against the attorneys, personally, and their client.

On October 31, 1989, attorney Davila wrote a letter to Barnhart indicating he was responding to Barnhart's letters to Zeglen and himself. Davila wrote that the Finsels were bound by the settlement agreement as officers and members of West Manor; that Beaver's contempt motion was well founded both in fact and law; that it had been filed in good faith; and that Beaver would file its own frivolous-conduct motion in response to any such motion on the part of the Finsels.

On November 22, 1989, Barnhart wrote individual letters to Zeglen and Davila advising that West Manor had not executed the agreement on behalf of its officers and members; that Heath had stated that she advised Zeglen on several occasions that Mr. Strotz, President of West Manor, could not bind the individual applicants for intervention but could speak only as a landowner for the particular lot owned by West Manor; that Zeglen had, himself, prepared and presented for execution a former proposed settlement agreement which contained a signature clause indicating authority on the part of Heath to sign on behalf of all of the applicants and not requiring their personal signatures; that, by contrast, the actual agreement later signed required individual

signatures of each of the applicants; that Zeglen knew that the originally prepared agreement would not bind each individual applicant; that *Hall's Safe Co. v. Herring–Hall–Marvin Safe Co.* (C.A.6, 1906), 146 F. 37, and R.C. 1702.55 stand for the proposition that the Finsels could not be bound as individuals; that the Finsels were never parties to the action; that Zeglen, as counsel for Beaver, had executed separate entries withdrawing the Finsels' application to intervene; that the motion for contempt was not well grounded in fact and law, contrary to Davila's statement; and that pursuit of the filed contempt motion would work a hardship on the Finsels.

On February 2, 1990, the court overruled Beaver's motion to file a supplemental complaint in the original action and to add new parties.

On February 2, 1990, the Finsels' motion to dismiss Beaver's request for an order requiring the Finsels to show cause why they should not be held in contempt of court was sustained.

On February 22, 1990, the court filed its entry finding that all parties had conceded the settlement agreement of July 11, 1989; that said agreement was a valid and existing agreement, at least as to all parties to the action at the time the agreement was entered into on July 11, 1989 and on July 31, 1989 when the case was dismissed by the court; that said parties were bound by the agreement and bound to comply with it; and that to the extent indicated in the entry of February 22, 1990, plaintiff's motion to enforce settlement was sustained.

The evidence received in the adversary hearing on the motion for fees supports the facts hereinabove set forth including, in particular, all of those facts set forth in Barnhart's letters to Zeglen and Davila.

It is significant that Taryn Heath testified that she had discussed the original draft of the proposed agreement with Zeglen and rejected it, stating to him that each client (the Finsels included) should personally sign the agreement. This led to the agreement actually executed on July 11, 1989 but which the Finsels refused to sign. It is further significant that Heath testified that it became apparent to her that the Finsels did not want to become a party to the agreement and that she so advised Zeglen. She testified that Zeglen responded that he didn't know how it could be settled without the Finsels' signatures and that without their signatures the agreement would not constitute a settlement. Further, Zeglen told Heath he wanted to resolve the entire matter "at this time" and didn't want any of the "proposed parties" to have the opportunity to propose a referendum. Heath testified that she told Zeglen that the Finsels would not sign. She testified that Zeglen ultimately agreed to the settlement without the Finsels' signatures. Heath told Zeglen that she rejected his proposal that the president of

West Manor sign for all the proposed parties to the agreement. These conversations show knowledge on Zeglen's part that the non-signing individuals might later speak out against the zone change and promote the referendum. Davila's knowledge is demonstrated through the exchange of correspondence between himself and Barnhart.

In its motion to show cause, Beaver alleged the following:

"In the case at bar, this Court issued an Order directing the parties to comply with the settlement. Despite this Order, West Manor, through Finsels actively opposed the rezoning of the property * * * in breach of the Settlement Agreement and in direct violation of the Court's Order. * * * West Manor and the Board (Perry) have breached the Agreement by actively opposing the rezoning of the property. * * * [B]oth West Manor and the Board are in violation of the Court's Order and should be punished for contempt. * * * "

Thus, Beaver's contempt charge against the Finsels is that the Finsels acted as agents for West Manor in violating that portion of the settlement agreement which forbids the applicants from opposing the zone changes "in any manner whatsoever." The Finsels, of course, were not "applicants," having refused to sign the agreement and never having been joined as parties in the underlying action by Beaver against Perry and West Manor.

In its brief filed in opposition to the Finsels' motion for attorneys' fees, signed by both Zeglen and Davila, Beaver argued that officers, agents and servants of West Manor were bound by the settlement agreement. This would be correct only if such officers, agents or servants spoke or acted for and in behalf of the corporation. Finsels' counsel had argued in their motion that West Manor could no more bind its several hundred members, individually, than could AT & T bind, individually, its one million shareholders to a corporate action. In the instant case, it is clear from the transcripts of the meetings of the Perry Township Zoning Commission and the Perry Township Board of Trustees that Diane Finsel stated clearly that she spoke in opposition to the proposed zoning change as an individual.

Before the zoning commission, Diane Finsel stated: "That is just *my* opinion." (Emphasis added.) Appearing before the board of trustees, she stated: "As vice president of—even though I am vice president of that association, I decided to withdraw *my* name from that contract as other people did to voice *my* opposition to this and there are hundreds of other people in West Manor who feel the same way *I* do that are opposed to this zone change." (Emphasis added.) Beaver has produced no evidence that either Diane or Michael Finsel at any time represented themselves as officers,

trustees or agents of West Manor in opposing the zone change or in promoting the referendum.

At certain times, Diane and Michael Finsel have served as officers or trustees of the corporation. Beaver argues that, as such, they were bound by the agreement "not to oppose the above-referenced (zoning) changes in any manner whatsoever." Beaver cites several cases as authority for the proposition that corporate officers and agents are automatically bound by the terms of a corporate agreement or court order against a corporation. However, a reading of these cases indicates they are authority, rather, for the proposition that corporate officers and agents having specific, designated corporate duties to perform to enable a corporation to act must perform those duties in the acts of the corporation. As their lead case, Beaver cites *Wilson v. United States* (1911), 221 U.S. 361, 376, [31 S.Ct. 538, 542, 55 L.Ed. 771, 777]. In that case, the president of a corporation received a subpoena from the grand jury ordering the *corporation* to produce certain corporate books in his possession. It was held that, despite his Fifth Amendment exemption, he had a duty as a corporate officer to produce the books in behalf of the *corporation.*

In *Fargo Women's Health Org., Inc. v. Larson* (N.D.1986), 391 N.W.2d 627, directors of the corporation could not be held in contempt for violating an injunction against the corporation absent evidence of knowledge, ratification, consent or participation on the part of the directors in the *acts of the corporation* in the commission of such violations.

In *Dept. of Revenue v. Carpet Warehouse, Inc.* (1984), 296 Or. 400, 676 P.2d 299, where obligations of a *corporation* required by law to be performed were not fulfilled, corporate agents required by law to perform the *corporate* acts could be held in contempt.

In *Americans Be Independent v. Pennsylvania* (1974), 14 Pa.Cmwlth. 179, 321 A.2d 721, corporate agents who took complete control of a corporation and operated such corporation in a knowing violation of a court order were subject to punishment for engaging in unfair trade practices.

The law appears to be correctly stated in *Hall's Safe Co. v. Herring–Hall–Marvin Safe Co.* (C.A.6, 1906), 146 F. 37. In *Hall's Safe* it was held that in the sale of a business by a private corporation, a stockholder was not contractually bound even though he acted as an officer of the corporation in the transaction. In *Hall's Safe* the court stated at 40–41:

" * * * The contract which the Herring–Hall–Marvin Company had was with the corporation only, and not with its stockholders or officers. The officers who conducted the business of the selling company were not parties to the contract. It is a familiar rule that an agent, who, having lawful authority, makes a contract with another for a known principal, does not bind

himself, but his principal only * * * [citations omitted]; and the officers of a private corporation, in respect to their liability on contracts entered into by them in behalf of the corporation, stand upon the same footing as agents of private individuals * * * [citations omitted]. If the purchaser desired to make the officers and agents of the selling corporation subject to the stipulations of the company in the contract of sale, it should have required their personal agreement to that effect.

" * * * [I]n matters of contract the officers and agents of a corporation are not bound personally by stipulations made by them in behalf of their principal. * * * "

On appeal, the United States Supreme Court modified the injunction issued by the lower court as to the rights of the defendant corporation in the use of the name "Hall" in the manufacture and sale of safes. However, as to the rights of the sons of the founder of the Hall Corporation which had sold the business to the plaintiff, Herring–Hall–Marvin Safe Company, the court stated: "We are not disposed to make a decree against the Halls personally." *Herring–Hall–Marvin Safe Co. v. Hall's Safe Co.* (1908), 208 U.S. 554, 28 S.Ct. 350, 52 L.Ed. 616; see, also, *Will v. View Place Civic Assn.* (1989), 61 Ohio Misc.2d 476, 580 N.E.2d 87; see, also, R.C. 1702.55.

Beaver points out that Diane Finsel submitted to Perry a referendum petition (to place on the ballot the Perry Board of Township Trustees' approval of the zone change) containing the signatures of Mr. and Mrs. Bennett who were signatories to the settlement agreement. Beaver argues that Mrs. Finsel, as an officer of West Manor, breached the agreement in so doing. However, Mrs. Finsel testified that she did not go to the Bennetts for their signatures, but that they came to her, indicating they had reconsidered their position on the zone change after signing the agreement. Mrs. Finsel further testified that the Bennetts counselled with their attorney before signing the referendum petition. It is clear from this testimony that Mrs. Finsel did not solicit the Bennetts. Further, there is no evidence that she took their signatures as an agent or representative of West Manor.

Based upon the evidence, these facts did not warrant the filing of the contempt action by Beaver against the Finsels under existing law. Neither was such action supported by a good faith argument for an extension, modification, or reversal of existing law. Further, this conduct served merely to harass the Finsels for the purpose of causing them to discontinue their anti-zone change activities. That this was the purpose is particularly borne out by attorney Zeglen's letter of July 28, 1989 to attorney Heath and by attorney Davila's letter of October 31, 1989 to attorney Barnhart. The conduct of attorneys Zeglen and Davila in prosecuting such action was frivolous. Diane

and Michael Finsel were adversely affected by such conduct, having been forced to hire legal counsel and to defend themselves against the motion to show cause.

R.C. 2323.51 provides for an award of reasonable attorney fees in favor of the aggrieved parties—in this case, Diane and Michael Finsel. R.C. 2323.-51(B)(3) further provides:

"The amount of an award that is made * * * shall not exceed, and may be equal to or less than * * *:

" * * *

"(b) * * * the attorney's fees that were both reasonably incurred by a party and necessitated by the frivolous conduct."

The court has made a line item analysis of the Finsels' counsel's invoice for legal services and expenses in the light of all of the evidence and in consideration of R.C. 2323.51(B)(3). With no intent to affect or determine the amount or the manner of computation of attorneys' fees as between the Finsels and their legal counsel, the court awards attorney fees in favor of Diane and Michael Finsel in the amount of $6,793.50 plus counsel's disbursements of $972.98 against attorney Joseph M. Zeglen and attorney Edwin Davila, jointly and severally.