This is an appeal by plaintiff, Linda Crooks, from a judgment of the Franklin County Court of Common Pleas, overruling plaintiff's objections to a magistrate's decision, and adopting the magistrate's finding that plaintiff and her counsel engaged in frivolous conduct, in violation of R.C.2323.51, warranting an award of attorney fees. Defendants have filed a cross-appeal.
This action arose out of plaintiff's termination, in August of 1994, from her employment with Consolidated Stores Corporation. On January 18, 1995, plaintiff filed a complaint, naming as defendants Consolidated Stores Corporation ("Consolidated"), William Kelley, Albert J. Bell, James A. McGrady, Steven Bromet, Brad Waite and Jo Roney. The complaint alleged causes of action for breach of employment contract, handicap discrimination, infliction of emotional distress, invasion of privacy and violation of public policy.
On October 25, 1995, defendants filed a motion for summary judgment. In the accompanying memorandum, defendants asserted that plaintiff was terminated from her employment for violating the company's substance abuse policy. Attached to the motion for summary judgment were various affidavits, including those of defendants Bell and Kelley. Bell and Kelley both averred in their affidavits that they "did not participate directly or indirectly in the decision to terminate Ms. Crooks' employment from Consolidated Stores Corporation." On December 11, 1995, plaintiff filed a memorandum contra defendants' motion for summary judgment.
On January 17, 1996, the trial court issued a decision granting in part and denying in part defendants' motion for summary judgment. Specifically, the court denied summary judgment as to the claims for breach of employment contract and violation of public policy, but granted summary judgment in favor of defendants on the claims for infliction of emotional distress, invasion of privacy and handicap discrimination. In addition, all of plaintiff's claims against the individual defendants were dismissed.
Both parties subsequently filed motions for "reconsideration" with the trial court. By decision filed February 29, 1996, the trial court denied plaintiff's motion for reconsideration but granted the motion filed by defendants, finding that reasonable minds could not conclude that Consolidated wrongfully discharged plaintiff in violation of public policy. By entry filed March 14, 1996, the trial court dismissed plaintiff's claim for wrongful discharge in violation of public policy, leaving plaintiff's cause of action for breach of an implied contract of employment as the only remaining claim for trial.
A trial date for plaintiff's claim for breach of an implied contract was set for April 1, 1996. On March 29, 1996, plaintiff filed a notice of dismissal of the action pursuant to Civ.R. 41(A)(1).
On April 15, 1996, defendants Consolidated, Kelley and Bell filed a motion seeking a hearing on a request for an award of attorney fees against plaintiff and her counsel as sanctions for alleged frivolous conduct. Specifically, defendants sought a hearing to determine whether the actions of plaintiff, in filing and maintaining claims against individual defendants Kelley and Bell, as well as in asserting a cause of action against Consolidated for infliction of emotional distress, constituted "frivolous conduct" within the meaning of R.C.2323.51. On May 13, 1996, plaintiff filed a memorandum contra defendants' motion for sanctions.
By entry filed May 29, 1996, the trial court granted defendants' request for a hearing on the motion for an award of attorney fees. The matter was referred to a magistrate of the trial court, and came for hearing before the magistrate on August 15, 1996. The magistrate issued a decision on October 9, 1996, finding that plaintiff and her counsel had engaged in frivolous conduct as defined under R.C. 2323.51. The magistrate further found that a sanction in the amount of $7,575 should be imposed against plaintiff and her counsel.
On December 23, 1996, plaintiff filed objections to the magistrate's decision. Defendants filed a memorandum in opposition to the objections, and also sought to supplement the record with evidence regarding attorney fees incurred in pursuit of the motion for sanctions. By decision filed November 5, 1997, the trial court overruled plaintiff's objections to the magistrate's report, and denied defendants' motion to supplement the record regarding additional fees related to prosecuting the motion for sanctions.
On appeal, plaintiff sets forth the following six assignments of error for review:
 "1. The Trial Court Erred In Awarding Sanctions Because The Conduct Complained Of Was Not 'Frivolous' As Set Forth In R.C. Section 2323.51(2)(a) And (b).
 "2. The Trial Court Erred In Awarding Sanctions Because Defendants Failed To Present Specific, Direct, And Identifiable Evidence Of The Legal Fees Necessarily Incurred In The Defense Of Messrs. Bell And Kelley As Required By R.C. 2323.51(B)(3).
 "3. The Trial Court Erred In Awarding Sanctions Because Defendants Failed To Present Evidence That Messrs. Bell And Kelley Were 'Adversely Affected' By The Alleged Frivolous Conduct As Required By R.C. Section 2323.51(B)(2)(A).
 "4. The Trial Court Erred In Awarding Sanctions Because It Failed To Determine When Plaintiff Knew Or Should Have Known That She Did Not Have Sufficient Evidence To Continue To Pursue Claims Against Bell And Kelley.
 "5. The Trial Court Erred In Awarding Sanctions Because Adopting The Magistrate's Report And Recommendation Would Result In Denying Plaintiff Her Right To Proceed To Final Disposition Of Her Claims And Due Process Of Law And Right To Jury Trial Under The Ohio Constitution, Section 16, Article I.
 "6. The Trial Court Erred In Ordering Plaintiff And Her Counsel To Pay Fees For Defense Of An Intentional Infliction Of Emotional Distress Claim Which Was Not Found To Be Frivolous Conduct."
Defendants set forth the following cross-assignment of error for this court's consideration:
 "The trial court erred in overruling Cross-Appellant's motion to supplement the record for additional attorneys' fees incurred in pursuing their motion for sanctions under R.C. 2323.51."
Plaintiff's first, second, third, fourth and sixth assignments of error are interrelated and will be discussed together. These assignments of error all involve the propriety of the court's decision to award attorney fees based on the court's determination that plaintiff and her counsel engaged in frivolous conduct by maintaining claims against defendants Bell and Kelley.
The award of attorney fees in this case was predicated upon a finding of frivolous conduct under R.C. 2323.51. The version of R.C. 2323.51 in effect at the time of the instant action provided in relevant part:
"(A) As used in this section:
 "(1) 'Conduct' means filing a civil action, asserting a claim, defense, or other position in connection with a civil action, or taking any other action in connection with a civil action.
 "(2) 'Frivolous conduct' means conduct of a party to a civil action or of his counsel of record that satisfies either of the following:
 "(a) It obviously serves merely to harass or maliciously injure another party to the civil action;
 "(b) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.
"* * *
 "(3) The amount of an award that is made pursuant to division (B)(3)(1) of this section shall not exceed, and may be equal to or less than, whichever of the following is applicable:
 "(a) If the party is being represented on a contingent fee basis, an amount that corresponds to reasonable fees that would have been charged for legal services necessitated by the frivolous conduct had the party been represented on an hourly fee basis or another basis other than a contingent fee basis;
 "(b) In all situations other than that described in division (B)(3)(a) of this section, the attorney's fees that were both reasonably incurred by a party and necessitated by the frivolous conduct. * * *"
In Ceol v. Zion Indus., Inc. (1992), 81 Ohio App.3d 286, 291, the court noted that an analysis of a claim under R.C. 2323.51
requires a determination of "(1) whether an action taken by the party to be sanctioned constitutes 'frivolous conduct,' and (2) what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party." A trial court's initial decision as to whether a party's conduct was frivolous involves a factual determination: "[t]his is particularly true if a court must determine if conduct 'serves merely to harass or maliciously injure another party to the civil action.' " Cable Co. v. Flowers (1995),104 Ohio App.3d 227, 233. In contrast, a determination "that conduct 'is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law,' requires a legal analysis." Id.
This court has previously noted the distinction to be made, when reviewing a trial court's decision to impose sanctions under R.C. 2323.51, "between questions which are purely of law, which will be addressed under a de novo standard of review, and those aspects of a trial court's decision which will be granted greater deference as involving primarily issues of fact." Lantz v. Ross (Nov. 18, 1997), Franklin App. No. 97APE03-372, unreported (1997 Opinions 4738, 4745), citingWiltberger v. Davis (1996), 110 Ohio App.3d 46. In Wiltberger,
this court held:
 "* * * [N]o single standard of review applies in R.C. 2323.51 cases. The inquiry necessarily must be one of mixed questions of fact and law.
 "With respect to purely legal issues, we are persuaded by the * * * line of cases which provide for a de novo standard of review. When an inquiry is purely a question of law, clearly an appellate court need not defer to the judgment of the trial court. However, we do find some degree of deference appropriate in reviewing a trial court's factual determinations; accordingly, we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings. This standard of review of factual determinations is akin to that employed in a review of the manifest weight of the evidence in civil cases generally, as approved in C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279
* * *.
 "Finally, where a trial court has found the existence of frivolous conduct, the decision to assess or not to assess a penalty lies within the sound discretion of the trial court. The language of R.C. 2323.51(B)(1) unequivocally vests the trial court with such discretion * * *." Wiltberger, supra, at 51-52. (Emphasis sic.)
In the present case, the record indicates that defendant Bell is the senior vice-president and general counsel for Consolidated, while defendant Kelley is the company's chairman of the board. In addressing the issue of whether there was evidence of frivolous conduct on the part of plaintiff in pursuing claims against these individual defendants, the trial court's decision states in part:
 "* * * [P]laintiff pursued Messrs. Kelley and Bell based upon her factually unsupported suspicion that the two actively engaged in 'infliction of emotional distress, handicap discrimination, invasion of privacy and violation of public policy.' In her defense, plaintiff's counsel asserts that a pre-filing meeting with Mr. Bell gave her the 'impression' that Bell 'and probably Mr. Kelley were involved in this.' * * * As to Mr. Kelley, plaintiff's counsel seems to have relied on plaintiff's subjective surmise that Kelley may have been involved in her termination. As to Mr. Bell, plaintiff apparently concluded that Bell gave legal advice on 'discrimination law' and therefore, was personally responsible for plaintiff's termination.
 "The failure to conduct a reasonable investigation of the facts and the law of a claim prior to filing a complaint may constitute frivolous conduct under O.R.C. 2323.51 and Civil Rule 11. * * *
"* * *
 "According to plaintiff's counsel, plaintiff could not afford much discovery and hoped to develop 'information' she had against Messrs. Kelley and Bell. Plaintiff's counsel explained pursuit of the action without having a factual basis on the theory that: '* * * [you] never know what you're going to find out.' However, as the magistrate noted, if plaintiff were financially limited in her ability to obtain deposition testimony, but had sources of information which would support her claims, affidavits of the plaintiff or of co-workers were an inexpensive way of presenting material in opposition to summary judgment.
 "The court is mindful that R.C. 2323.51 is to be applied carefully so that legitimate claims are not chilled. * * * However, under the circumstances of this case, the court concludes that failure to dismiss claims against the individual defendants which were based on mere suspicion and not supported by any factual basis is 'frivolous conduct' as that term is defined in Section 2323.51 of the Ohio Revised Code."
Thus, the trial court, in considering the evidence presented at the hearing, found that no factual basis existed to support the claims brought against Bell and Kelley, and therefore determined that plaintiff's failure to dismiss her claims against these defendants constituted frivolous conduct.
The record indicates that, during the taking of plaintiff's deposition, plaintiff was asked by defendants' counsel whether she was aware of any facts indicating that either Kelley or Bell were involved in the decision leading to her termination. Regarding the claims against Kelley, plaintiff stated that she did not have any conversations with Kelley regarding her termination, nor did she know whether Kelley was consulted about the decision to terminate her employment. Plaintiff was also not aware of any facts suggesting that Kelley was involved in the decision for plaintiff to undergo a drug screen. Plaintiff further testified that she never had any arguments with Kelley, and she could not even recall whether she had any contact with Kelley during July of 1994, just prior to her termination.
When asked if she was aware of any facts linking the actions of Bell to the decision to terminate her employment, plaintiff replied, "I don't know what his connection was. * * * I don't know if they consulted Al Bell or not" (Tr. 235.) Plaintiff acknowledged that she always maintained a professional relationship with Bell during her employment and that Bell had never mistreated her. Plaintiff stated that Bell was not present at any of the meetings regarding the decision for her to undergo a drug screen and she did not know if he was involved in that decision. Finally, when asked whether she believed that "either Mr. Bell or Mr. Kell[e]y were motivated by any other factors aside from your failure of the drug screen to have you terminated," plaintiff responded, "I have * * * suspicions. Do I have any facts? No." (Tr. 237.)
At the hearing on sanctions, plaintiff's counsel was questioned by counsel for defendants about the decision to name Bell and Kelley as defendants in the action. Plaintiff's counsel, when asked whether she was aware of any evidence linking Kelley or Bell to the decision to terminate plaintiff or to have her undergo a drug test, responded, "[a]t the time of the summary judgment motion perhaps not." (Tr. 44.) When asked whether she had developed "any fact whatsoever" to support the allegations made against these defendants, counsel stated, "[p]erhaps not with Mr. Bell and Mr. Kell[e]y as far as them specifically." (Tr. 46.)
As found by the trial court, the record in this case indicates that the allegations regarding the involvement of Bell and Kelley were based on suspicion rather than a factual basis. Plaintiff's counsel spoke at the hearing about her "belief" that Kelley knew about the decision to terminate plaintiff, but she acknowledged that she did not place any evidence before the trial court in response to the motion for summary judgment regarding either Bell or Kelley. We note that the record also indicates that, following the deposition of plaintiff, counsel for defendants sent a letter to plaintiff's counsel seeking to secure a dismissal of these individual defendants from the action. In the letter, counsel for defendants argued that "your client has no evidence that Mr. Kell[e]y or Mr. Bell even participated in any decision affecting her employment." The record indicates that plaintiff's counsel chose not to respond to this letter. Further, as noted by both the magistrate and trial court, plaintiff did not attempt to take the deposition testimony of either Bell or Kelley to ascertain whether there existed any factual basis for the claims alleged.
This court has previously upheld the imposition of sanctions for frivolous conduct where the action was "based upon suspicions which were generally not supported at all and/or contrary to documentary and other evidence." Rossman Co. v.Donaldson (Dec. 6, 1994), Franklin App. No. 94APE03-388, unreported (1994 Opinions 5556, 5586). See, also, Taylor v.Franklin Blvd. Nursing Home, Inc. (1996), 112 Ohio App.3d 27,31-32 (award of sanctions proper where plaintiff's counsel pursued claim against defendant despite fact that any reason for maintaining action disappeared following plaintiff's deposition); Lewis v. Celina Fin. Corp. (1995), 101 Ohio App.3d 464,472 (counsel's failure to properly investigate suit prior to filing may constitute frivolous conduct); Masturzo v. RevereRd. Synagogue (1994), 98 Ohio App.3d 347, 353 (finding of frivolous conduct upheld where appellant failed to dismiss suit against appellee in timely fashion where appellant was informed that appellee did not have an interest in property which was the subject of lawsuit). Based upon a review of the record in the instant case, we find no error in the trial court's finding that plaintiff's pursuit of the claims against Bell and Kelley, despite the lack of any factual basis, constituted frivolous conduct.
We further find no merit to plaintiff's contention that defendants failed to show that they were adversely affected by the frivolous conduct. There was evidence presented that defendants "incurred additional attorney fees as a direct, identifiable result of defending the frivolous conduct in particular." Wiltberger, supra, at 54. Nor do we agree with plaintiff's contention that the trial court should have only awarded sanctions for the time period following the discovery cut-off date (November 8, 1995). We note that this issue was not raised in plaintiff's objections to the magistrate's decision, and thus the trial court did not address this argument. Even assuming that plaintiff had properly raised this issue, we agree with defendants' contention that the record suggests that plaintiff and her counsel were aware, or should have been aware, long before the discovery cut-off date, that there was no evidentiary basis for the claims against defendants Bell and Kelley.
We do find, however, that the amount of fees awarded is excessive and requires a reduction. The record indicates that, during the hearing on the motion for sanctions, defendants' counsel, James Davidson, testified that a total of $17,575 was expended on preparing for and taking the deposition of plaintiff, as well as for work performed in preparing the summary judgment motion and defending all of the individual defendants on summary judgment. As to the fees sought in the motion for sanctions, Davidson opined that, of the $17,575 total, the portion attributable to the defense of the claims against defendants Bell and Kelley, as well as defending the infliction of emotional distress claim, amounted to $7,575. In explaining his view that $10,000 should be deducted from the $17,575 total to arrive at the amount sought as sanctions, Davidson stated:
 "The basis of that opinion is my experience in employment litigation similar to this, would lead me to say that if I were just going to take the deposition of a plaintiff and were going to file a motion for summary judgment, which is the only activities which we have captured here, that I could not conceive of a situation where those activities would require fees in excess of $10,000. * * *" (Tr. 98-99.)
We are unable to conclude that this testimony provides an objective basis for ascertaining the proper award of fees. Neither the testimony of Davidson, nor the notations on the billing records, adequately identify what portion of the legal fees were specifically incurred in defending the claims against defendants Bell and Kelley. We note that the billing records submitted in support of the motion for sanctions provide, in most instances, only generalized notations of the work without any attempt to identify the fees associated with the claims against defendants Bell and Kelley. This fact is reflected during the cross-examination of Davidson by plaintiff's counsel. When asked to identify specific charges as to Bell and Kelley, Davidson responded, "I can't do that because * * * this entire document consists of all of the work that we did to secure summary judgment and to take your client's deposition in order to secure the facts necessary to support a summary judgment motion." (Tr. 102.) When asked how much time was spent on particular research related to an alleged "fiduciary duty" claim against defendant Kelley, Davidson acknowledged that, "[t]he way * * * our time descriptions are prepared, there's no way for me to ascertain that." (Tr. 107.) Thus, rather than pointing to specific billing numbers, Davidson relied on his "professional judgment" in testifying as to the amount of fees he believed were expended.
We note that, based on the billing records submitted, it appears that much of the work identified in those records involved tasks common to all seven named defendants. To the extent that the billing records identify tasks specifically related to Bell and Kelley, those notations do not appear to involve substantial tasks. Specifically, there is an entry indicating that, on August 23, 1995, 3.50 hours were spent preparing the affidavits of Bell and Kelley, to be attached to the defendants' memorandum in support of summary judgment. The record indicates that both affidavits were one page in length. There is also an entry showing that the affidavit of Bell was reviewed on August 29, 1995, as well as an entry indicating that the affidavits of Bell and Kelley were reviewed and revised on August 30, 1995. The amount of time spent on these latter two tasks cannot be accurately determined because, under the hours listed, those tasks are grouped together with other general work performed on the motion for summary judgment. The entire record suggests, however, that the weakness of plaintiff's case against Bell and Kelley was evident to defendants' counsel, and that the bulk of counsel's preparation of the summary judgment motion dealt primarily with the other defendants (in particular defendant Consolidated). We note that the motion for summary judgment itself, which is thirty-two pages in length, contains less than one page of discussion on issues pertaining to the individual liability of defendants Bell and Kelley.
Further, a review of plaintiff's deposition, taken February 20, 1995, indicates that, while the deposition transcript is nearly three hundred pages in length, only approximately eight pages contain questions related to the issue of the potential involvement of Bell and Kelley in the decision to terminate plaintiff. Defendants made no attempt to specifically allocate what portion of the time spent on the deposition was devoted to the defense of Bell and Kelley. Finally, we note that defendants' motion for sanctions also sought attorney fees for time spent in defending Consolidated in the underlying action against the claim for infliction of emotional distress. Davidson testified at the sanctions hearing that the total amount of fees requested by defendants ($7,575) included time spent in defending the claim for infliction of emotional distress. The trial court, however, did not make a finding that plaintiff engaged in frivolous conduct in bringing that cause of action. Thus, we agree with plaintiff's contention that the award of fees was subject to reduction for time related to the defense of the infliction of emotional distress claim.
While defendants are entitled to an award of fees, we conclude that the tasks related to the defense of defendants Bell and Kelley were relatively uncomplicated and do not justify awarding the full amount sought. Thus, we find that the award of $7,575 is excessive under the facts of this case and constitutes an abuse of discretion. R.C. 2323.51
"disallows an award in excess of fees 'reasonably incurred * * * and necessitated by the frivolous conduct.' "Wiltberger, supra, at 54, citing R.C. 2323.51(B)(3). On remand, the trial court should base its fee award only on those hours that may reasonably be found to have been attributable to the defense of Bell and Kelley. We recognize the difficulty encountered by the trial court in this case because of the billing records submitted by defendants. While defendants are entitled to reasonable attorney fees, the burden is upon the party seeking attorney fees to provide evidence of the services rendered and of the reasonable value of such services. Enyartv. Columbus Metro. Area Community Action Org. (1996), 115 Ohio App.3d 348,358. In the event defendants fail, on remand, to more clearly show how amounts of time are allocated to specific work related to Bell and Kelley, as well as to segregate the fees attributable to the defense of defendants Bell and Kelley from the fees sought (but not awarded) for the claim of infliction of emotional distress, the trial court should reduce the award to include only the portion of work attributable to the frivolous conduct which is specifically identified by the evidence. See, e.g., Hensley v. Eckerhart (1983), 461 U.S. 424,434 (party seeking an award of attorney fees should submit evidence supporting the hours worked and the rates claimed; where the documentation of hours is inadequate, the trial court may reduce the award accordingly).
Based upon the foregoing, the first, third and fourth assignments of error are overruled, while the second and sixth assignments of error are sustained.
Under the fifth assignment of error, plaintiff contends that a finding of frivolous conduct in this case violates plaintiff's constitutional right to an open court and to a jury under Article I, Sections 5 and 16 of the Ohio Constitution.
At the outset, we note that plaintiff did not argue before the trial court, in her objections to the magistrate's report, that a finding of frivolous conduct was in violation of her right to a jury trial under Article I, Section 5 of the Ohio Constitution. It is well-settled that "a constitutional question can not be raised in a reviewing court unless it appears it was urged in the trial court." State, ex rel. Spechtv. Bd. Of Educ. (1981), 66 Ohio St.2d 178, 182.
Plaintiff did argue before the trial court, however, that a finding of frivolous conduct was in contravention of Art. I, Sec. 16 of the Ohio Constitution, which provides that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Plaintiff asserts that, "[r]equiring a plaintiff to dismiss pending claims before final disposition upon receipt of a threatening letter from defense counsel after discovery advising that she has no viable claims" violates her right to an open court. We find no merit to plaintiff's argument.
A similar argument was rejected by the court in Dawson v.Rockenfelder (Feb. 9, 1998), Stark App. No. 1997CA00280, unreported, in which the court held:
 "Appellant argues that R.C. 2323.51 violates Ohio Constitution Article I, Section 16, which requires that all courts shall be open. Contrary to appellant's argument, the frivolous conduct statute does not unreasonably restrict the openness of courts. Appellant was given his day in court, and had an opportunity to both submit evidence in support of his underlying claim, and to submit evidence concerning frivolous conduct. R.C. 2323.51 is tailored to deter allegations which are made in bad faith, and does not unreasonably restrict access to the court."
The Ohio Supreme Court has held that "the risk of a motion for sanctions under * * * [R.C. 2323.51] is one that an attorney should anticipate when filing a complaint." RonScheiderer Assoc. v. London (1998), 81 Ohio St.3d 94, 97. In the present case, plaintiff was not denied access to the courts based on a threatening letter; rather, the facts indicate that plaintiff pursued an action against two defendants even after it became clear that there was no reasonable basis for the claims asserted. Under such circumstances, the award of sanctions "may be used to quash the 'chilling effect' of the misuse of power by an attorney in the course of litigation."Beaver Excavating Co. v. Perry Twp. (1992), 79 Ohio App.3d 148,155. See, also, Turowski v. Johnson (1990), 68 Ohio App.3d 704,706 ("R.C. 2323.51 was enacted precisely to have a chilling effect * * * on overzealous, unjustifiable, and frivolous actions"). Further, plaintiff had an opportunity to be heard and to defend her position prior to the imposition of sanctions; plaintiff's due process argument is not well-taken.Dawson, supra.
Plaintiff's fifth assignment of error is overruled.
We will next address defendants' cross-assignment of error, which asserts that the trial court erred in overruling defendants' motion to supplement the record for additional attorney fees incurred by defendants in pursuing their motion for sanctions. The record indicates that, following plaintiff's filing of objections to the magistrate's recommendation that defendants be awarded fees in the amount of $7,575, defendants filed, on January 6, 1997, a memorandum in response to plaintiff's objections. Defendants also filed, on January 23, 1997, a motion to supplement the record, seeking a hearing for an award of attorney fees incurred in prosecuting the motion for sanctions. Defendants contended that they had incurred an additional $6,578 in fees related to pursuing the motion for sanctions.
In the trial court's November 5, 1997 decision, overruling plaintiff's objections to the magistrate's report, the court declined to grant defendants' motion to include an additional award of fees incurred in pursuing the evidentiary hearing on defendants' original motion for sanctions and for opposing plaintiff's objections to the magistrate's decision. In support, the trial court cited Newman v. Al Castrucci FordSales, Inc. (1988), 54 Ohio App.3d 166. In Newman, a case involving sanctions under Civ.R. 11, the court held that the trial court abused its discretion by holding plaintiff's attorney liable for defendant's attorney fees generated in connection with the Civ.R. 11 motion for sanctions. The court reasoned that, to hold plaintiff's attorney accountable for the defendant's fees arising out of the prosecution of the Civ.R. 11 motion would put the attorney in an "untenable position: either he must forgo arguing against the motion and agree to pay defendant's attorney fees, or he can proceed to oppose the motion, thereby increasing defendant's fees and the amount he might eventually be required to pay." Newman, supra, at 170.
Subsequent to the trial court's decision in the instant case, the Ohio Supreme Court resolved a conflict between various jurisdictions regarding the issue of whether an award for frivolous conduct under former R.C. 2323.51 may include attorney fees incurred in prosecuting the motion for sanctions. In Scheiderer, supra, the court construed the provisions of former R.C. 2323.51(B)(3), regarding the statutory guidelines for determining the amount of attorney fees, holding that:
 "These guidelines make no distinctions as to whether attorney fees that are related to a certain portion of a case may or may not be included in an award pursuant to a determination of frivolous conduct. Rather, the statute grants courts the authority to award any reasonable attorney fees incurred by a party adversely affected by frivolous conduct. A plain reading of the statute reveals that reasonable attorney fees incurred by a party in prosecuting a motion for sanctions may be awarded to that party upon a finding of frivolous conduct.
 "Shifflet nonetheless asserts that as counsel of record to the party found to have engaged in frivolous conduct, he cannot be held liable because to do so would place him in an 'untenable position.' Shifflet claims that imposing liability on attorneys for fees sought in a motion for sanctions under R.C. 2323.51 would force the attorney either to forgo arguing against the motion and agreeing to pay the fees, or to oppose the motion which would further expose the attorney to potential liability. Therefore, Shifflet argues, the attorney would then face improper conflicts of interest with a client due to the attorney's personal liability, and could not fulfill his duty to represent a client 'zealously within the bounds of the law,' Canon 7 of the Code of Professional Responsibility.
 "We disagree with these contentions. The statute plainly states that an award 'may be made against a party, his counsel of record, or both.' Former R.C. 2323.51(B)(4). The General Assembly gave courts the discretion to hold those engaging in frivolous conduct responsible for their actions. The language of the statute is a clear indication that the General Assembly chose not to make any distinctions based upon the policy arguments which Shifflet asserts here.
 "Additionally, we observe that the risk of a motion for sanctions under the statute is one that an attorney should anticipate when filing a complaint. We have no desire to cause a chilling effect on the duty of counsel to vigorously represent their clients. Counsel, however, must balance that duty with their concomitant obligation to the bar, the court, and their client to perform responsibly 'within the bounds of the laws. See Canon 7; EC 7-1. When a trial court has determined that reasonable inquiry by a party's counsel of record should reveal the inadequacy of a claim, a finding that the counsel of record has engaged in frivolous conduct is justified, as is an award, made within the statutory guidelines, to any party adversely affected by the frivolous conduct.
 "Accordingly, we hold that the trial court did not abuse its discretion in awarding attorney fees to the defendants that include fees incurred for the prosecution of the motion for sanctions. An award of attorney fees made by a court pursuant to former R.C. 2323.51 may include fees incurred in prosecuting a motion for sanctions. Such an award may be made against a party, the party's counsel of record, or both. (Former R.C. 2323.51[B][3] and 2323.51[B][4] construed.)" Scheiderer, supra, at 97-98. (Emphasis sic.)
Thus, in Scheiderer, the Ohio Supreme Court rejected the policy considerations relied upon by the appellate court inNewman, supra. In the present case, although not entirely clear from the trial court's decision, it appears that the court, based on its reliance on the Newman decision, concluded as a matter of law that defendants were not entitled to additional attorney fees incurred in pursuing the motion for sanctions. Based upon the Scheiderer decision, which we again note was rendered subsequent to the trial court's ruling in the instant case, we conclude that the matter should be remanded to the trial court for further proceedings on the issue of fees incurred by defendants in prosecuting the motion for sanctions. We express no opinion as to whether the fees sought are necessary or reasonable, a matter commended to the trial court's attention.
Accordingly, defendants' cross-assignment of error is sustained to the extent provided above.
Based upon the foregoing, plaintiff's first, third, fourth and fifth assignments of error are overruled, plaintiff's second and sixth assignments of error are sustained, defendants' cross-assignment of error is sustained, the judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part, and causeremanded.
BRYANT and BOWMAN, JJ., concur.