### BROD, ETC., Plaintiff-Appellee, v CINCINNATI TIME RECORDER CO., ETC., Defendant-Appellant.

Ohio Appeals, First District, Hamilton County.

No. 6847.   Decided November 3rd, 1947.

Alton E. Purcell, Cincinnati, for plaintiff-appellee.
Milton B. Schott, for defendant-appellant.

### OPINION

By MATTHEWS, PJ.

This is an appeal from a judgment entered on the pleadings and the facts developed in a colloquy between the court and counsel at the opening of the trial.

In the amended petition, the plaintiff alleged that he purchased certain choses in action from the defendant and that the defendant executed and delivered to him a written assignment therefore in the following language:

"FOR VALUE RECEIVED, The Cincinnati Time Recorder Company, an Ohio corporation, the Assignor, does, without recourse on it, hereby sell, assign, transfer and set over unto

Joseph T. Brod, doing business as National Merchandise Company of Cincinnati, Ohio, the Assignee, all of its right, title and interest, in and to the book accounts and debts listed and described in schedule hereto annexed, marked Exhibit "A" and made a part hereof;

"It being understood and agreed that this assignment is made without any representations or warranties as to the legality or correctness of said account and such assignment is subject to any and all counterclaims, set-offs and credits to which the debtors listed on said schedule may be entitled."

The plaintiff alleged of the choses in action so assigned there were certain ones totaling $15488.50, which had been paid to an employee of defendant who had embezzled the amount collected, but that at the time of the assignment the defendant had no knowledge of the collection or embezzlement.

The plaintiff also alleged that after he discovered evidence indicating the collection and conversion of these choses the defendant agreed that if plaintiff would obtain proof thereof, it would present the claim therefor to the bonding company that guaranteed the fidelity of the employee, and in the event of collection it would pay to plaintiff any amount collected thereon from such bonding company.

The plaintiff also alleged that relying on the defendant's promise, he did collect proof, and, as a result, the defendant collected $1548.50 from the Bonding Company, but refused to pay to the plaintiff the amount so collected. The plaintiff prayed judgment for that amount.

By answer and stipulation, the defendant admitted the execution and delivery of the assignment, the fact that its employee collected the money due on certain choses, as alleged by the plaintiff, that the fidelity of the employee was guaranteed by a bonding company, that it presented its claim to the bonding company, and received from it the sum of $709.80.

The defendant specifically denied that it promised the plaintiff that if he would furnish proof of the collection and conversion, it would proceed against the bonding company, and in the event of collection it would pay the plaintiff the amount so collected.

On these facts appearing, the Court entered judgment for the plaintiff for $709.80. This appeal is from that judgment.

On the argument of this case, plaintiff's counsel quite frankly conceded that had the collecting agent accounted to his employer for the money collected, the plaintiff, under the terms of the assignment, would have had no cause of action.

notwithstanding his discovery after the assignment that the amount due on the chose was less than the parties supposed at the time of the assignment. In view of the provision that the assignment was made "without any representations or warranties as to the legality or correctness of said accounts" and "subject to any and all counterclaims, set-offs and credits," it would be difficult to withhold that concession. He contends, however, that the fact that the embezzlement was discovered after the assignment and the amount collected from the indemnifying bonding company a different juristic situation is presented. In support of that contention, chief reliance is placed upon the case of Allen v Hamman Lumber Co., 34 P. (2d) 397, and to a lesser degree, upon Dickson v Merchants Elevator Co., 44 Mo. App., 498, and on a long line of cases holding that a transfer of tangible personal property carries with it the right of the vendor against a tortfeasor who had converted the property to his own use.

Allen v Hamman Lumber Co. and Dickson v Merchants Elevator Co., supra, applied to somewhat unusual circumstances the familiar rule that the assignment of a chose carries with it all liens and every remedy or security that is incidental to the subject-matter of the assignment. In the first case, the insurance company elected to pay the damage to the mortgaged premises, notwithstanding it could have defended on the ground that it had not consented to the assignment of the mortgage thereon. In the policy there was an express recital that it was for the benefit of the mortgagee. All the court held was that as the insurance company chose to consider itself liable and pay, it was obliged to pay to the holder of the mortgage, and that the assignor of the mortgage having received the money from the insurance company was obliged to account therefor to his assignee.

In the second case, the ward obtained a judgment against her guardian for failure to account as guardian. The court held that she could enforce the judgment against the sureties upon the guardian's bond, and that upon assigning the judgment, the assignee of the judgment could also.

The cases holding that the vendee of tangible personal property succeeds to the rights of the vendor against a tortfeasor who has converted the property are inapplicable. Conversion of an intangible would seem impossible in the nature of things. So it is generally held that an action for conversion of choses in action cannot be maintained. 53 Am. Jur., (Sec. 5) 809. In any event, there was no conversion of this chose.

Now what was the legal effect of the embezzlement of this money by the defendant's employee?

It is conceded that the embezzler was the defendant's duly authorized agent to collect. Payment to him was payment to the defendant. To the extent of the payment, the debt was extinguished and the debtor discharged. A new relation was established. The collecting agent became bound to the defendant to account to it for the amount collected, and the surety upon his bond was bound to see that he faithfully discharged that obligation. His failure, for any reason, made his surety liable, but his surety was never bound to see that the defendant's debtors paid their debts. The collecting agent's surety was never collateral to their obligations to the defendant.

As we view it, the amounts paid to the defendant's agent were credits extinguishing in part or whole the debts due it. The question confronting us is, what effect in law that fact has upon the relation of assignor and assignee when at the time of the assignment the assignor has no knowledge that the payments have been made?

There is no doubt that in the absence of an express agreement there is an implied warranty that the assigned chose is a valid obligation and that the amount of money purporting to be due on it is owing and unpaid at the time of the assignment. 4 Am. Jur., 308, et seq.

Does the language of this assignment exclude the warranty that would otherwise be implied? We think it does. It would seem that the language used was chosen for the very purpose of warning the assignee that every risk was to be assumed by him. He was told that the assignor made no representation or warranties as to the legality or correctness of the accounts, and then he was specifically told that the assignment was subject to any and all counterclaims, set-offs and credits to which the debtors might be entitled.

To hold that the defendant was bound to pay to the plaintiff the amount which its agent had collected from the debtors would be creating a liability in the presence of an express agreement to the contrary. In 4 Am. Jur., 309, it is said: "There may, of course, be an express agreement that the assignor is exempt from liability for any reason therein, and that the purchaser takes at his risk absolutely."

It seems clear that had the credit manager, after the assignment to the plaintiff, disclosed to the defendant, his employer, that he had made collections and had accounted therefor, the plaintiff would have had no cause of action against the defendant on this assignment. Or, if the employee had disclosed his collection without accounting to the

defendant, that this assignment would not have had the effect of transferring the cause of action against the employee from the defendant to the plaintiff, so as to enable the plaintiff to maintain an action against the employee. It is not perceived how the fortuitous circumstance that the defendant had taken the precaution to require a surety for the employee's fidelity, would give to the plaintiff a cause of action against the surety when he had none against the surety's principal.

Reduced to its final analysis, is this not a case in which the assignor had made a collection of which it was unaware and made an assignment in good faith while in ignorance of the collection, but took the precaution of guarding itself against liability by express provision in the assignment? We think so.

For these reasons, we are of the opinion that the assignment gave the plaintiff no cause of action against the defendant for the amount collected from the bonding company. If we are right in this conclusion, the court erred in entering judgment for the plaintiff.

It is alleged in the amended petition that the defendant subsequent to the assignment promised the plaintiff that if he would furnish proof of the default of its employee, it would present the claim to the bonding company and would pay to the plaintiff whatever was received by it, and that relying upon that promise or offer, he did furnish proof which enabled the defendant to collect from the bonding company the sum of $1548.50. By answer, the defendant denied these allegations. Thus, an issue of fact was raised which has not been decided. The judgment to be entered depends upon the decision of that issue.

For these reasons, the judgment is reversed, and the cause remanded for further proceedings according to law.

MATTHEWS, PJ, ROSS and HILDEBRANT, JJ, concur in Syllabus, Opinion and Judgment.