**WILTBERGER, Appellee,**

v.

**DAVIS et al., Appellants.**

[Cite as *Wiltberger v. Davis* (1996) 110 Ohio App.3d 46.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE09–1179.

Decided March 26, 1996.

*McCarthy, Palmer, Volkema, Boyd & Thomas, Michael S. Miller* and *Dennis M. McCarthy,* for appellee.

*E. Bruce Hadden Co., L.P.A.,* and *E. Bruce Hadden; Artz, Dewhirst, Farlow & Lawrence, Brian S. Artz* and *Beverly Farlow,* for appellants William J.F. Davis and Affiliated Risk Managers Agency, Inc.

*Martin, Pergram & Browning Co., L.P.A.,* and *Stephen D. Martin,* for appellant Lauterbach and Eilber.

TYACK, Judge.

This cause, which is before the court a second time, originally arose from a dispute between insurance agents regarding commissions allegedly due James B. Wiltberger from defendants William J.F. Davis, Affiliated Risk Managers Agency, Inc. ("ARMA"), and Lauterbach & Eilber, Inc. ("L & E"). To understand the issues presented in the present appeal, a summary of the complex background of this litigation is necessary. In *Wiltberger v. Davis* (June 30, 1994), Franklin App. No. 93AP–1031, unreported, 1994 WL 321081 (*"Wiltberger I "*), we outlined the following procedural history.

In September 1990, Wiltberger filed a complaint in the Franklin County Court of Common Pleas, setting forth causes of action alleging breach of contract, fraud in the formation of a contract, negligent misrepresentation, and conversion. Wiltberger essentially alleged that pursuant to his 1983 agreement with ARMA, an insurance agency operated by Davis, Wiltberger was to write general casualty, property and fidelity insurance through ARMA on a commission basis. L & E was made a party to the action as an alleged successor in interest to Davis and/or ARMA. L & E filed a motion to dismiss, arguing that it was not a successor in interest to Davis or ARMA and, accordingly, was not a proper party to the lawsuit. The trial court construed the motion as one for summary judgment and overruled it pursuant to an entry journalized in January 1991.

In May 1992, the trial court rendered a decision granting partial summary judgment in favor of Davis and ARMA, dismissing Wiltberger's claims for fraud in the formation of a contract, negligent misrepresentation, and conversion. No journal entry was filed. However, after the trial court's decision was rendered, Wiltberger filed an amended complaint in August 1992. The amended complaint set forth causes of action alleging breach of contract, fraud in the formation of a contract, fraud in the performance of a contract, and assumption of debt. The amended complaint also added Wiltberger & Associates, Inc., as a necessary party plaintiff.

In December 1992, the trial court journalized an entry granting partial summary judgment in favor of Davis and ARMA relative to Wiltberger's fraud-based claims.

After numerous continuances, trial of the case was ultimately scheduled to commence in April 1993. Defendants and their respective counsel appeared, as did Wiltberger's counsel. However, when Wiltberger failed to appear, the trial court ultimately dismissed his claims for failure to prosecute, without prejudice, pursuant to Civ.R. 41(B)(1). The trial court's decision states that Wiltberger's counsel was not prepared for trial because counsel erroneously "interpreted settlement negotiations as having been resolved." The trial court overruled the motion of plaintiff's counsel for a Civ.R. 41(A) voluntary dismissal.

L & E appealed the denial of its motion for summary judgment and the trial court's decision to dismiss the cause without prejudice. In *Wiltberger I*, this court reversed the denial of L & E's motion for summary judgment, finding that Wiltberger failed to satisfy his burden of producing evidence to demonstrate that L & E had assumed debts of Davis or ARMA.

Wiltberger cross-appealed, arguing error by the trial court in (1) dismissing the cause of action for fraud in the performance of the contract, (2) dismissing the causes of action for conversion, (3) refusing to grant his motion for a continuance,

and (4) dismissing his case for failure to prosecute rather than allowing a voluntary dismissal. All four assignments of error were overruled.

Prior to the journalization of the dismissal, all parties filed motions seeking attorney fees. An evidentiary hearing was held in February 1995, following the disposition of the first appeal in *Wiltberger I.* In July 1995, the trial court rendered its decision denying all motions for attorney fees, which was journalized in August 1995.

Defendants ARMA, William J.F. Davis, and L & E ("appellants") have jointly appealed the denial of their respective motions for attorney fees, assigning two errors for our consideration:

"I. The trial court erred in denying Appellants [ARMA] and William J.F. Davis's Motion for Attorney Fees pursuant to Ohio Rev.Code § 2323.51.

"II. The trial court erred in denying Appellant [L & E's] Motion for Attorney Fees pursuant to Ohio Rev.Code § 2323.51."

R.C. 2323.51 proscribes "frivolous conduct in civil actions" by parties and/or their counsel. R.C. 2323.51(A) defines "frivolous conduct" as follows:

"(2) 'Frivolous conduct' means conduct of a party to a civil action or of his counsel of record that satisfies either of the following:

"(a) It obviously serves merely to harass or maliciously injure another party to the civil action;

"(b) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law."

A preliminary point of contention among the parties is the applicable standard of review by which we are to evaluate the trial court's judgment. As the parties' respective arguments make clear, and as our research reveals, the case law as to this issue is disparate and often just plain muddled. One analytical problem arises because courts have not drawn a distinction between the two types of sanctionable conduct—the "harassing" conduct and the "legally groundless" conduct. Obviously, the two types of conduct are not always mutually exclusive. When courts have expressly distinguished between the two provisions, divergent authority has resulted from varying determinations as to the applicable standard of review.

Counsel for appellants contends that a *de novo* standard of review is appropriate. Counsel for appellee counter that this court is bound by a narrow "abuse of discretion" standard. Arguably, there exists authority for both positions.

In *Estep v. Kasparian* (1992), 79 Ohio App.3d 313, 316, 607 N.E.2d 109, 111–112, this court applied an abuse of discretion standard in reviewing a trial court's

imposition of sanctions pursuant to the "legally groundless" provision of R.C. 2323.51. However, the narrow issue in *Estep* was against whom the sanctions should have been imposed; the court expressly noted that the appeal did not involve the issue of whether the record supported the trial court's finding of frivolous conduct. *Id.* at 315, 607 N.E.2d at 110–111.

In *Rossman & Co. v. Donaldson* (Dec. 6, 1994), Franklin App. Nos. 94APE03–388, 94APE03–389 and 94APE05–695, unreported, 1994 WL 694985 this court cited *Estep* for the general principle that sanctions imposed for "frivolous conduct * * * may not be reversed absent a finding that the trial court abused its discretion," where the trial court imposed sanctions pursuant to the "harassment" provision of the statute. To further complicate the analysis, the "harassment" finding by the trial court was based at least in part upon the trial court's legal conclusion that certain claims were without legal foundation.

In *Ceol v. Zion Industries, Inc.* (1992), 81 Ohio App.3d 286, 610 N.E.2d 1076, the Lorain County Court of Appeals applied an abuse of discretion standard as to a trial court's determination of frivolous conduct in a case invoking the "legally groundless" provision, noting that a trial judge has the "benefit of observing the entire course of proceedings." In *Riley v. Langer* (1994), 95 Ohio App.3d 151, 159, 642 N.E.2d 1, 6, the Hamilton County Court of Appeals cited *Ceol* and applied an abuse of discretion standard in another "legally groundless" case.

In *Passmore v. Greene Cty. Bd. of Elections* (1991), 74 Ohio App.3d 707, 600 N.E.2d 309, the Greene County Court of Appeals applied a *de novo* standard in reviewing "legally groundless" conduct. We agree with the following rationale invoked by the court:

"The question of whether a pleading or argument is warranted under existing law or can be supported by a good faith argument for an extension, modification, or reversal of existing law is a question of law, peculiarly within the competence of an appellate court." *Id.* at 712, 600 N.E.2d at 312.

Numerous courts have cited and applied the *de novo* standard of *Passmore*. See, *e.g.*, *Maines Paper & Food Service–Midwest, Inc. v. Regal Foods, Inc.* (1995), 100 Ohio App.3d 454, 654 N.E.2d 355 (Lucas County), and *Tomb & Assoc., Inc. v. Wagner* (1992), 82 Ohio App.3d 363, 612 N.E.2d 468 (Miami County).

■ The analytical quagmire resulting from the above case law leads us to conclude that no single standard of review applies in R.C. 2323.51 cases. The inquiry necessarily must be one of mixed questions of fact and law.

■ With respect to purely legal issues, we are persuaded by the *Passmore* line of cases which provide for a *de novo* standard of review. When an inquiry is purely a question of law, clearly an appellate court need not defer to the

judgment of the trial court. However, we do find some degree of deference appropriate in reviewing a trial court's factual determinations; accordingly, we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings. This standard of review of factual determinations is akin to that employed in a review of the manifest weight of the evidence in civil cases generally, as approved in *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

■ Finally, where a trial court *has* found the existence of frivolous conduct, the decision to assess or not to assess a penalty lies within the sound discretion of the trial court. The language of R.C. 2323.51(B)(1) unequivocally vests the trial court with such discretion:

"[A]t any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment * * *, *the court may* award reasonable attorney's fees to any party to that action adversely affected by frivolous conduct. * * * " (Emphasis added.)

As counsel for Wiltberger notes, appellants allude to "harassing" conduct by Wiltberger and/or his counsel. However, a review of the pertinent pleadings and the trial court's decision reveals that the crux of appellants' motions for attorney fees alleged frivolous conduct on the part of Wiltberger and/or his counsel due to their pursuit of "legally groundless" claims. Under both assignments of error, appellants contend that the trial court erred in denying their motions because the tort claims seeking punitive damages alleged in Wiltberger's complaint and amended complaint were legally groundless and, therefore, frivolous.

■ Under the first assignment of error, appellants ARMA and Davis argue that following the trial court's decision granting them partial summary judgment as to the claim for fraud in the *"formation"* of a contract, Wiltberger's amended complaint realleging fraud (in the *"performance"* of a contract) constituted a frivolous claim seeking punitive damages where such damages were clearly unavailable pursuant to all existing legal authority. Appellants advance a similar argument as to the allegedly meritless tort claim of conversion. In essence, appellants argue that all fraud and conversion claims were clearly frivolous because this was simply a breach-of-contract case and nothing more; counsel for Wiltberger acted frivolously because no "good faith argument for an extension, modification, or reversal of existing law" (as to the unavailability of tort or punitive damages in a breach-of-contract action) existed or was even attempted. Appellants contend that evidence adduced at the hearing on the motions for sanctions revealed that counsel for Wiltberger knew that the appropriate cause of action would have been for an accounting against ARMA and only ARMA.

According to appellants' interpretation of the trial judge's decision denying sanctions, the decision was based upon the judge's erroneous legal conclusion that "as long as one cause of action (breach of contract * * *) is proper, then any other claim is not subject to sanction because of the one arguably proper claim asserted." The precise language of the trial judge's decision to which appellants object is that "while [Mr. Wiltberger and/or his counsel] may have been mistaken as to some of their legal theories, the cause of action [breach of contract] was proper." Appellants submit that the statute requires examining each claim individually, as opposed to the complaint as a whole.

The statutory definition of "conduct" is set forth in R.C. 2323.51(A)(1):

" 'Conduct' means filing a civil action, *asserting a claim,* defense, or other position in connection with a civil action, or taking any other action in connection with a civil action." (Emphasis added.)

While we agree with appellants' legal contention that the statute clearly requires examining each claim individually, we disagree with appellants' interpretation of the trial court's rationale for not awarding sanctions.

With respect to the fraud claims, we find a later sentence in the decision more enlightening in construing the trial court's rationale for overruling appellants' motions. The trial court ultimately concluded that "*[appellants] have not been prejudiced* by [Wiltberger's] raising these legal theories because the lawsuit and the underlying breach-of-contract claim remained valid." (Emphasis added.) We interpret the trial court's rationale as emphasizing the *lack of prejudice* to appellants resulting from inclusion of arguably erroneous fraud claims along with the valid underlying breach-of-contract claim.

Such an approach in analyzing and applying the frivolous conduct statute is mandated by the statute itself. R.C. 2323.51(B)(2)(a) reads:

"An award of reasonable attorney's fees may be made * * * only after the court does all of the following:

"(a) Sets a date for a hearing *to determine whether particular conduct was frivolous, to determine, if the conduct was frivolous, whether any party was adversely affected by it,* and to determine, if an award is to be made, the amount of that award * * *." (Emphasis added.)

The above provision clearly mandates that once a court has determined that frivolous conduct has occurred, the court must then make an additional determination, a *factual* finding entitled to some degree of deference, that a party has been "adversely affected" by such conduct before determining whether an award of attorney fees is appropriate.

■ While we recognize that the frivolous conduct statute provides for an award of attorney fees as the lone remedy for those "adversely affected" by such conduct, we reject the notion that a party is necessarily or presumptively "adversely affected" based *solely* upon the fundamental necessity to expend attorney fees to defend a lawsuit in general. Where a determination has been made that an entire lawsuit, a certain claim or claims, or a defense or defenses asserted in a civil action were frivolous, the party seeking R.C. 2323.51 attorney fees must affirmatively demonstrate that he or she incurred additional attorney fees as a direct, identifiable result of defending the frivolous conduct in particular.

The statute itself speaks to this requirement. It disallows an award in excess of fees "reasonably incurred * * * and necessitated by the frivolous conduct." R.C. 2323.51(B)(3). Further, the statute specifically authorizes admission into evidence of an "itemized list or other evidence of the legal services necessitated by the alleged frivolous conduct * * *." R.C. 2323.51(B)(5).

The record contains competent, credible evidence supporting the trial court's implicit determination that appellants failed to prove, even if the fraud claims rose to the level of "frivolous," that they were "adversely affected" by such conduct. More precisely, the record contains insufficient evidence upon which to base an award of attorney fees. At the evidentiary hearing on the parties' respective motions for sanctions, appellants introduced no evidence whatsoever demonstrating the necessity of incurring additional attorney fees as a direct result of defending allegedly frivolous claims. Appellants also failed to produce such evidence in the post-hearing briefs they filed. The entire record before us is simply devoid of any evidence to support a finding that appellants were "adversely affected" by having to defend allegedly frivolous fraud-related claims, as distinguished from the need to defend the lawsuit in general. Again, we will not presume prejudice; the statute requires an affirmative showing that a party was adversely affected.

■ With respect to the conversion claims, the trial court concluded that the state of existing law "is not so clear as to support an award of sanctions." As indicated above, to the extent the trial court determined the state of "existing law," the question is clearly a legal one and subject to *de novo* review. However, a corollary necessarily implicit in this legal conclusion is a factual finding that the conversion claims were supported by an argument raised in "good faith." Thus, a trial court's conclusion that a party and/or his counsel acted in good faith is a factual determination which will not be disturbed if the record contains competent, credible evidence to support that determination.

■ Wiltberger's conversion claim was based upon an allegation that appellants converted money due and owing Wiltberger for his commissions. In

support thereof, counsel for Wiltberger cites several older cases of minimal precedential value which, according to counsel, arguably recognized a conversion action where the property allegedly converted was money. Appellants respond with rather sparse authority as well. The single Ohio case cited by appellants is *Brod v. Cincinnati Time Recorder Co.* (1947), 82 Ohio App. 26, 37 O.O. 357, 77 N.E.2d 293, with emphasis on the following language:

"Conversion of an intangible would seem impossible in the nature of things. So it is generally held that an action for conversion of choses in action cannot be maintained." *Id.* at 29, 37 O.O. at 359, 77 N.E.2d at 295.

Our review of the scant authority on the subject does suggest that existing law generally allows actions for conversion to be based only upon the taking of identifiable, tangible personal property. See, *e.g.*, *Zacchini v. Scripps–Howard Broadcasting Co.* (1976), 47 Ohio St.2d 224, 1 O.O.3d 129, 351 N.E.2d 454. In granting appellants summary judgment on the conversion claims, the trial court agreed that an action for the conversion of money is not recognized "except where the money is specifically identifiable."

While it appears that the *general* rule is that a conversion action is only appropriate where tangible, identifiable personal property is involved, we cannot say that the state of existing authority is such that an action for conversion was wholly unwarranted and could not be supported by a good faith argument.

The trial court rendered a decision which purported to grant appellants summary judgment as to the conversion claims; the decision was never formally journalized. However, we find it noteworthy that counsel for Wiltberger did not assert a conversion claim in the amended complaint. The trial court could reasonably base a finding of "good faith" on the part of Wiltberger's counsel in declining to pursue conversion claims after the trial court had ruled adversely to such claims.

The record contains competent, credible evidence supporting the trial court's factual finding that Wiltberger's counsel acted in good faith.

The first assignment of error is overruled.

Under the second assignment of error, appellant L & E first "incorporates" the fraud- and conversion-related arguments raised above by appellants ARMA and Davis in the first assignment of error. Wiltberger responds that the pleadings evidence the fact that such fraud and conversion claims were not actually pursued against L & E to any significant degree; any mention of such claims were inadvertent references regarding damages in the prayer section of the complaint. In fact, as Wiltberger notes, the record contains L & E's motion to dismiss converted to motion for summary judgment, which specifically declares that assumption of debt "is the sole claim for relief against" L & E. More significant-

ly, in *Wiltberger I,* we observed that L & E argued that "the *only* allegation in the complaint that pertains to [L & E] is * * * that [L & E] assumed the debt owed to [Wiltberger]." (Emphasis added.) Therefore, we reject L & E's contention that the trial court erred in not awarding it attorney fees for its purported defense of any fraud- or conversion-related claims.

The heart of appellant L & E's second assignment of error is that the assumption of debt claim asserted against it was frivolous because counsel for Wiltberger knew that no merger had occurred between L & E and ARMA; thus, it was improper to pursue a claim based upon successor liability. According to L & E, it was joined as a party simply because of plaintiff's counsel's belief that L & E's "deep pockets" could be a source for payment of damages in the event the resources of ARMA and/or Davis proved insufficient.

In *Wiltberger I,* L & E argued that the trial court erred in failing to grant its summary judgment motion, to which it attached an affidavit of the treasurer of L & E stating that L & E had not merged with ARMA, that L & E was not a successor in interest to ARMA, and that L & E had not assumed any of Davis's or ARMA's liabilities or contractual obligations. We reversed the trial court's denial of L & E's summary judgment motion due to Wiltberger's failure to satisfy his evidentiary burden in opposing the motion. Specifically, we held that the trial court erred in considering as admissible a document which did not conform to the evidentiary requirements of Civ.R. 56(C). The document, the lone attachment to Wiltberger's memorandum in opposition, was an unsworn copy of a letter on L & E letterhead. The letter, signed by William J.F. Davis as "president" of L & E, alluded to the fact that L & E and ARMA may have merged.

Although the letter was deemed inadmissible for purposes of summary judgment, we agree with the trial court's conclusion that, for purposes of defending an allegation of frivolous conduct, the substance of the letter could provide a sufficient factual basis upon which to pursue a viable claim based upon successor liability.

The second assignment of error is overruled.

Having overruled the assignments of error, the judgment of the trial court is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and STRAUSBAUGH, JJ., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.