OPINION
Appellant, Susan K. Todd, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting appellant and appellee, John R. Todd, a divorce and dividing the parties' property pursuant to the terms of an antenuptial agreement, which the court previously determined was valid and enforceable.
The parties were married on April 16, 1994. Prior to their wedding, the parties executed an antenuptial agreement on April 11, 1994. Appellee filed a complaint for divorce on April 18, 1997, and attached a copy of the antenuptial agreement to the complaint. Appellant filed an answer on May 6, 1997, denying generally that the antenuptial agreement was valid or enforceable. Appellee filed a motion to determine the validity of the antenuptial agreement on July 30, 1997. The trial court held a hearing to determine the validity of the antenuptial agreement on September 25, 1998. Both parties filed briefs in lieu of closing arguments. On December 31, 1998, the trial court issued a decision finding that the antenuptial agreement was valid and enforceable. The trial court held a contested divorce trial on March 10, 1999. Both parties filed proposed findings of fact and conclusions of law. The trial court issued a final entry on May 13, 1999, granting the parties a divorce and dividing their assets pursuant to the terms of the antenuptial agreement. Appellant filed a timely notice of appeal.
On appeal, appellant asserts two assignments of error:
Assignment of Error No 1
 THE TRIAL COURT ERRED IN RULING THAT THE ANTENUPTIAL AGREEMENT EXECUTED APRIL 11, 1994 WAS VALID.
 Assignment of Error No 2
 THE TRIAL COURT ERRED IN RULING THAT ALL ASSETS ACQUIRED DURING THE MARRIAGE FROM INCOME EARNED BY PLAINTIFF FROM HIS SOLE PROPRIETORSHIP WERE NON MARITAL PURSUANT TO THE ANTENUPTIAL AGREEMENT AND THEREFORE NOT SUBJECT TO DISTRIBUTION AS MARITAL ASSETS.
The trial court's factual findings reflect appellee's testimony as to the events leading to the execution of the antenuptial agreement, which amounts to an implicit finding that appellant's testimony on this issue was not credible. As the Supreme Court of Ohio has instructed, the credibility of witnesses is a question for the trier of fact and not for a reviewing court to determine. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,81.
The parties lived together for one year prior to their marriage. At the time of the execution of the antenuptial agreement, appellee had substantial assets while appellant had few assets. Both parties had been married previously, and appellee had three children from his prior marriage. The parties discussed an antenuptial agreement at least one month prior to their marriage. In appellant's presence, appellee's attorney recommended that they sign an antenuptial agreement. Several appointments were made with appellee's attorney to discuss the terms of the antenuptial agreement, but appellant failed to keep these appointments. Appellee desired an antenuptial agreement to protect himself in the event of a divorce and to protect his children from his previous marriage in the event of his death. Appellee would not have married appellant without an antenuptial agreement.
The parties moved up their wedding date from May 1994, to April 16, 1994, due to appellant's father's scheduled hospitalization for cancer treatment and appellant's desire to have her father participate in the wedding. On April 11, 1994, the parties drove to appellee's attorney's office together. Both parties were presented with a draft of the antenuptial agreement for the first time at this meeting. When appellee's attorney discovered that appellant did not have an attorney, he enlisted another attorney from the same building to advise appellant regarding the antenuptial agreement. Appellant consulted with this attorney for two hours, during which he reviewed the terms of the antenuptial agreement with her and during which she asked many questions about the interpretation of the antenuptial agreement. The parties also reviewed their listings of assets, attached to the antenuptial agreement as exhibits "A" and "B." Several revisions were made prior to the execution of the antenuptial agreement, and appellant demanded a payment of $2,000 from appellee as a condition of signing the antenuptial agreement so that she would have seed money in the event of a divorce. Appellee wrote appellant a check for $2,000, and the money was deposited into a CD in appellant's name.
During the marriage, appellee acquired substantial assets in his own name from the proceeds of his business, Arrow Heating Cooling, including an airplane and investment accounts. Appellee also formed Todd Real Estate and acquired several properties in his name only. No joint property was acquired by the parties during the marriage.
In appellant's first assignment of error, she argues that the trial court erred by ruling that the antenuptial agreement was valid. We disagree.
The Supreme Court of Ohio has held that the validity of an antenuptial agreement is a question of fact for the trial court and that the trial court's decision will not be reversed absent an abuse of discretion. Bisker v. Bisker (1994), 69 Ohio St.3d 608,609-610. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 218.
The test for the validity of an antenuptial agreement was delineated by the Supreme Court of Ohio in Gross v. Gross
(1984), 11 Ohio St.3d 99, paragraph two of the syllabus:
 Such agreements are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce.
In Fletcher v. Fletcher (1994), 68 Ohio St.3d 464, paragraph one of the syllabus, the Supreme Court of Ohio addressed the evidentiary burdens under the Gross test:
 When an antenuptial agreement provides disproportionately less than the party challenging it would have received under an equitable distribution, the burden is on the one claiming the validity of the contract to show that the other party entered into it with the benefit of full knowledge or disclosure of the assets of the proponent. The burden of proving fraud, duress, coercion or overreaching, however, remains with the party challenging the agreement.
Additionally, the Supreme Court indicated that a party receiving disproportionately less than what an equitable distribution would have provided must have had "a meaningful opportunity to consult with independent counsel." Id. at paragraph two of the syllabus.
Under the first factor of the Gross test, the trial court found that the antenuptial agreement was entered into freely, without fraud, duress, coercion or overreaching. Appellant argues that the evidence clearly indicates that the agreement was the product of duress, coercion and overreaching. However, appellee counters that appellant waived these affirmative defenses by not specifically pleading them in her answer, as required by Civ.R. 8(C). Under Civ.R. 8(C), a party must set forth affirmatively in a responsive pleading any matter constituting an avoidance or an affirmative defense. This court has held that affirmative defenses not specifically pleaded in a responsive pleading are waived unless the party moves to amend the pleadings under Civ.R. 15. Mossa v. W. Credit Union, Inc. (1992),84 Ohio App.3d 177, 181.
Appellant did not raise any affirmative defenses in her answer nor did she ever move to amend the pleadings. At the hearing on the antenuptial agreement, appellee moved for a judgment on the opening statements because appellant failed to plead any affirmative defenses in her answer. Appellant's counsel responded by indicating that he was only presenting evidence related to nondisclosure of assets. The trial court overruled the motion. During the hearing, appellee's counsel objected when appellant's counsel attempted to present evidence of fraud. Despite stating during the hearing that her argument was limited to nondisclosure of assets, appellant asserted the affirmative defenses of duress, coercion and overreaching in her brief in lieu of closing argument. Appellee again asserted waiver in his brief. However, the trial court failed to address the waiver issue in its decision, concluding instead that the antenuptial agreement was entered into freely, without fraud, duress, coercion or overreaching.
We find that appellant waived the affirmative defenses of duress, coercion and overreaching by failing to plead them in her answer and by failing to move to amend her pleadings as provided in Civ.R. 8(C) and Mossa. Thus, the first factor of theGross test was satisfied.
The second factor of the Gross test is whether there was full disclosure or full knowledge and understanding of the nature, value and extent of the parties' assets. The trial court found there was no testimony that appellant was unaware of any of appellee's assets and that all the values in the listing were accurate. Appellant argues that appellee did not fully disclose his assets in that his listing of assets (Exhibit B to the antenuptial agreement) was inaccurate and not specific. Appellee counters that appellant was aware of his assets because she lived with him for a year prior to their marriage and that the values were accurate.
Under Fletcher, appellee bears the burden of proving full disclosure because appellant would receive disproportionately less under the terms of the antenuptial agreement than she would under an equitable distribution. However, our review of the record supports the trial court's finding of full disclosure. The only omitted asset from appellee's listing was Kelaarad, Inc., which had no value and of which appellant was fully aware. Although appellant argues that appellee did not actually have $30,000 in cash as listed on Exhibit B to the antenuptial agreement, appellee explained in his testimony that this amount represented the money he had in his two checking accounts which he treated as cash for the purposes of the asset listing. Additionally, appellee explained how he reached a value for his business, Arrow Heating Cooling. Thus, appellee met his burden of proving full disclosure of his assets. No evidence was presented indicating that these values were not accurate. Moreover, under Fletcher, appellant bore the burden of proving any fraud by appellee in listing the value of his assets. Thus, the second factor of the Gross test was satisfied.
No evidence was presented by either party under the third factor of the Gross test, whether the agreement encourages divorce or profiteering by divorce. The parties were married for two years prior to the filing of the divorce action, and the terms of the antenuptial agreement do not provide for a significant sum in property settlement or in spousal support in the event of divorce. See Gross, at 105 (providing a hypothetical example of what the Supreme Court of Ohio considers to be encouraging divorce or profiteering by divorce). Thus, the third factor of the Gross
test was satisfied.
The final consideration from Fletcher is whether the financially disadvantaged party had a meaningful opportunity to consult with independent counsel. The trial court found that appellant had the assistance of legal counsel and the record supports this finding. When appellee's counsel learned that appellant did not have representation, he enlisted another attorney in his building to advise her. They discussed the antenuptial agreement for two hours, with appellant asking many interpretation questions. Appellant was able to negotiate a $2,000 payment for her to sign the antenuptial agreement and revisions were made to the terms of the antenuptial agreement. The fact that she was never billed for the services of this attorney is not dispositive.
Because we find that the factors of the Gross test were satisfied as well as the consideration of independent counsel fromFletcher, we conclude that the trial court did not abuse its discretion by finding that the antenuptial agreement was valid and enforceable. Consequently, appellant's first assignment of error is overruled.
In appellant's second assignment of error, she argues that the trial court erred in interpreting the antenuptial agreement to hold that all assets acquired during the marriage from income derived from appellee's separate property were not marital assets. We disagree.
The law of contracts applies to the interpretation of an antenuptial agreement. Fletcher, at 467. The interpretation of a contract that is clear and unambiguous is a question of law, and no issue of fact exists to be determined. State ex rel. Parsonsv. Fleming (1994), 68 Ohio St.3d 509, 511; Davis v. LoopcoIndustries, Inc. (1993), 66 Ohio St.3d 64, 66. Questions of law are reviewed de novo. Wiltberger v. Davis (1996), 110 Ohio App.3d 46,51-52.
In a divorce action, the domestic relations court is required to determine whether property is separate or marital and to divide both marital and separate property equitably. R.C.3105.171(B). Marital property generally includes all property acquired by either party during the marriage as well as the appreciation of separate property due to the labor, monetary, or in-kind contributions of either party during the marriage. R.C.3105.171(A)(3)(a)(i) and (iii). Marital property is to be divided equally in general, and each spouse is considered to have contributed equally to the acquisition of marital property. R.C.3105.171(C)(1) and (2). However, marital property does not include separate property. R.C. 3105.171(A)(3)(b). Under R.C.3105.171(A)(6)(a)(v), separate property includes any real or personal property that is excluded by a valid antenuptial agreement. Thus, Ohio law specifically allows for property that would normally be considered marital property to be excluded from a division of marital property by a valid antenuptial agreement.
Under sections 2(a) and (b) of the antenuptial agreement, all property owned by either party at the commencement of the marriage and all property acquired out of the proceeds or income from property owned at the commencement of the marriage, including property attributable to appreciation due to the efforts of either party, is separate property. Additionally, the antenuptial agreement specifically provides for the acquisition of jointly held property in both the parties' names under section 7. The trial court interpreted these sections to find that the parties intended that all property that the parties owned prior to the marriage, as well as any property or assets acquired out of the proceeds or income from separate property, was separate property. Only property acquired under section 7 would be marital property, but no property was jointly acquired during the marriage.
We agree with the trial court's interpretation and conclude that this interpretation is required by the clear and unambiguous language of the antenuptial agreement. Appellant argues that the income from appellee's business was marital income and that it was used to acquire significant assets which should be considered marital and subject to division as marital property under the provisions of R.C. 3105.171. However, as noted above, Ohio law specifically provides for property to be excluded from marital property by the terms of a valid antenuptial agreement under R.C. 3105.171(A)(6)(a)(v). Nothing in the Ohio Revised Code prohibits parties from contracting in an antenuptial agreement to exclude from marital property assets acquired out of income generated from separate property. Moreover, the fact that appellee's primary source of income is revenue from his business rather than a salary from an employer does not require a different conclusion since the antenuptial agreement specifically defines income from separate property as separate property.
Thus, the trial court did not err in interpreting the antenuptial agreement and concluding that there was no joint marital property to divide. Consequently, appellant's second assignment of error is overruled.
Based upon the foregoing reasons, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.
Judgment affirmed.
 _____________________________ JUDGE KENNEDY
BRYANT and LAZARUS, JJ., concur.