OPINION
{¶ 1} Counsel for Plaintiff-appellant Georgetta Kinnison appeals from the January 19, 2005, Judgment Entry of the Richland County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 15, 2002, Georgetta Kinnison filed a sexual harassment complaint against appellees Advance Stores Company, Inc., which operates an Advance Auto Parts Store in Mansfield, Ohio, and Russell Pitts, the manager of such store. After Kinnison filed an amended complaint, appellees filed a motion to dismiss for failure to state a claim pursuant to Civ.R. 12(B)(6). The trial court granted such motion.
 {¶ 3} Pursuant to an Opinion filed in Kinnison v. AdvanceStores Company, Richland App. No. 02CA73, 2003-Ohio-3387, this Court reversed the judgment of the trial court, finding that the trial court erred in dismissing appellant's complaint for failure to state a claim upon which relief can be granted. The case was thus remanded.
 {¶ 4} Subsequently, on March 22, 2004, appellees filed a Motion for a Protective Order alleging, in relevant part, as follows:
 {¶ 5} ". . . When defense counsel Kimberly Smith learned on February 16, 2004, that Plaintiff intended to subpoena Ms. Williams [appellee Russell Pitts' daughter] for deposition, she called Plaintiff's counsel Douglas Winston the following day to inquire why. Mr. Winston stated that he believed Mr. Pitts had lied at his deposition about the ownership of a particular vehicle. The ownership of the vehicle is not relevant to any issue in this case, and Ms. Smith told Mr. Winston that.
 {¶ 6} "Nonetheless, on or about March 4, 2004, Plaintiff served Ms. Williams with a deposition subpoena. On March 11, Ms. Smith again informed Mr. Winston that the information he sought from Ms. Williams was not relevant, asked that he withdraw the subpoena, and said that if the subpoena was not withdrawn she would be forced to move for a protective order.
 {¶ 7} "On March 18, 2004, Ms. Smith sent Mr. Winston a letter informing him yet again that Ms. Williams had no knowledge relevant to this case and that the information he sought about the vehicle was publicly available through a Bureau of Motor Vehicles title search for the nominal fee of $2.00. Ms. Smith even provided Mr. Winston with the Vehicle Identification Number to assist him."
 {¶ 8} Appellant, in her response to such motion, indicated that appellee Russell Pitts had testified that his daughter, Rose, owned a 1989 Olds Regency and that the same was offered to appellant, but that the evidence showed that Rose never owned such a vehicle. According to appellant, "the testimony sought from Rose Pitts goes to the credibility of Defendant [Russell] Pitts. . . .".
 {¶ 9} On March 30, 2004, the trial court overruled appellees' motion for a protective order.
 {¶ 10} Thereafter, on April 5, 2004, appellees filed a Motion for Summary Judgment. On April 22, 2004, appellees filed a Motion for Sanctions against appellant's counsel, alleging that he had engaged in egregious and unprofessional conduct. Appellees, in their motion, specifically alleged that appellant's counsel had engaged in sanctionable conduct by: (1) making private digital recordings of discovery depositions without advance notice to opposing counsel or approval of the court; (2) asking appellee Russell Pitts' daughter, Rose Pitts Williams, highly personal and irrelevant questions during her deposition and by harassing and intimidating her; and (3) failing to ensure either that appellant's daughter appeared for an out-of-state deposition that appellant's counsel had participated in scheduling or to ensure that defense counsel was timely informed that appellant's counsel did not expect such witness to appear.
 {¶ 11} On May 12, 2004, Georgetta Kinnison voluntarily dismissed her complaint without prejudice pursuant to Civ.R. 41(A)(1)(a).
 {¶ 12} A hearing on appellees' Motion for Sanctions was held on October 26, 2004. As memorialized in a Judgment Entry filed on January 19, 2005, the trial court found that appellant's counsel had engaged in frivolous and sanctionable conduct and imposed sanctions on appellant's counsel. The trial court, in its entry, specifically stated as follows:
 {¶ 13} "It is hereby ordered that Attorney Winston pay the costs defendants' attorneys expended in the deposition of non party Rose Pitts Williams in the amount of $143.60.
 {¶ 14} "It is further ordered that Attorney Winston compensate defendant's attorneys for the costs of attempting to attend the deposition of defendant's [sic][1] daughter in Morris, Illinois in the amount of $4,093.53 together with reporter's fee in the amount of $247.65."
 {¶ 15} It is from the trial court's January 19, 2005, Judgment Entry that appellant's counsel now appeals, raising the following assignments of error:
 {¶ 16} "I. THE TRIAL COURT ERRED IN ITS DETERMINATION THAT APPELLANT COUNSEL'S USE OF VOICE RECORDINGS AT CERTAIN DEPOSITIONS PROBABLY VIOLATED `THE LETTER OF OHIO'S DISCOVERY RULES' AS SUCH DETERMINATION IS CONTRARY TO LAW.
 {¶ 17} "II. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S COUNSEL `USED THE DEPOSITION OF' ROSE WILLIAMS (PITTS) `TO HARASS HER AND BADGER HER WITH IRRELEVANT AND INADMISSIBLE EVIDENCE.' THIS FINDING IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF EVIDENCE AND IS CONTRARY TO LAW.
 {¶ 18} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMINING APPELLANT'S COUNSEL WAS UNDER DUTY TO ENSURE THAT A WITNESS SUBPOENAED BY OPPOSING COUNSEL ATTENDED HER DEPOSITION AND FURTHER ERRED IN FINDING THAT APPELLANT'S COUNSEL ACTIONS DEMONSTRATED THAT HE KNEW THE DEPONENT WOULD NOT APPEAR AND THAT APPELLANT'S COUNSEL DID NOT PLAN ON ATTENDING THE SUBJECT DEPOSITION."
 STANDARD OF REVIEW {¶ 19} R.C. 2323.51 provides that a court may award court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or appeal who was adversely affected by frivolous conduct. `Frivolous conduct,' as defined in R.C.2323.51(A)(2)(a)(i), includes conduct that "obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation".
 {¶ 20} As the court found in Wiltberger v. Davis (1996),110 Ohio App.3d 46, 673 N.E.2d 628, no single standard of review applies in R.C. 2323.51 cases, and the inquiry necessarily must be one of mixed questions of law and fact. With respect to purely legal issues, we follow a de novo standard of review and need not defer to the judgment of the trial court. Wiltberger, supra, at 51-52, 673 N.E.2d 628. "When an inquiry is purely a question of law, clearly an appellate court need not defer to the judgment of the trial court. Id. However, we do find some degree of deference appropriate in reviewing a trial court's factual determinations; accordingly, we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings. Id This standard of review of factual determinations is akin to that employed in a review of the manifest weight of the evidence in civil cases generally, as approved in C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578." Id. at 51-52.
 {¶ 21} Where a trial court has found the existence of frivolous conduct, the decision whether or not to assess a penalty lies within the sound discretion of the trial court. Id. at 52, 673 N.E.2d 628. Abuse of discretion requires more than simply an error of law or judgment, implying instead that the court's attitude is unreasonable, arbitrary or unconscionable.Tracy v. Merrell-Dow Pharmaceuticals, Inc. (1991),58 Ohio St.3d 147, 152, 569 N.E.2d 875. Furthermore, R.C. 2323.51 employs an objective standard in determining whether sanctions may be imposed against either counsel or a party for frivolous conduct.Stone v. House of Day Funeral Serv., Inc. (2000),140 Ohio App.3d 713, 748 N.E.2d 1200.
 I {¶ 22} Appellant,[2] in the first assignment of error, argues that the trial court erred in holding that appellant's counsel's use of voice recordings at depositions "probably violated the letter of Ohio's discovery rules".[3] We disagree.
 {¶ 23} In the case sub judice, appellant's counsel, over objection and sometimes, surreptiously made private audio recordings of depositions. The trial court, in its January 19, 2005, Judgment Entry, found that, in doing so, appellant's counsel "violated the spirit and probably the letter of Ohio's discovery rules." We agree.
 {¶ 24} Civil Rule 30(B)(3) provides that "[i]f a party taking a deposition wishes to have the testimony recorded by other than stenographic means, the notice [of deposition] shall specify the manner of recording, preserving, and filing the deposition. The court may require stenographic taking or make any other order to ensure that the recorded testimony will be accurate and trustworthy." (Emphasis added). In the case sub judice, there is no dispute that appellant's counsel did not give notice that he would be making an audio recording of the deposition and, in fact, there is evidence that he attempted to conceal the audio recording. In addition, even after opposing counsel objected, appellant's counsel persisted in making audio recordings for his own "private" use until a court reporter objected.
 {¶ 25} Based on the foregoing, appellant's first assignment of error is overruled.
 II {¶ 26} Appellant, in the second assignment of error, argues that the trial court erred in finding that appellant's counsel used the deposition of Rose Pitts Williams, appellee Russell Pitts' daughter, to harass Williams and badger her with irrelevant and inadmissible evidence. Appellant specifically maintains that the trial court's finding is against the manifest weight of the evidence and is contrary to law. We disagree.
 {¶ 27} Our standard of reviewing a claim that a trial court's judgment is against the manifest weight of the evidence is to review the record and determine if the judgment is supported by some competent and credible evidence going to all the essential elements of the case. If the record does contain such evidence, we may not reverse a decision as being against the manifest weight of the evidence. See C.E. Morris Company v. Foley
Construction Company (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 28} The trial court, in its January 19, 2005 Judgment Entry, stated, in relevant part, as follows:
 {¶ 29} "Over the objection of attorneys for the defendants and their request for a protective order, this Court gave Attorney Winston permission to depose a non party. Attorney Winston personally informed this Court that he had only a few questions to ask Russell Pitts' daughter about her residence at the time plaintiff sought employment with Advance Store. A review of the transcript of the deposition clearly indicates that almost all of the questions asked of Mr. Pitts' daughter had no relevance whatsoever with the issues in this case.
 {¶ 30} "Mr. Winston related at the October 24, 2004 hearing that this Court had given him permission to conduct the deposition without placing any restrictions on his inquiries. On March 30, 2004, after talking to Attorney Winston by telephone, this Court signed an entry granting Attorney Winston's request to hold the deposition of Mr. Pitts' daughter on April 1, 2004. Attorney Winston was on March 30, 2004 and is today well aware of this Court's instructions that he not use the deposition of Mr. Pitts' daughter to harass her, ask her irrelevant questions or badger her in any way."[4]
 {¶ 31} The trial court, based on the foregoing, ordered appellant's counsel to pay $143.60, the costs appellees' attorneys expended in the deposition of Rose Pitts Williams.
 {¶ 32} As is stated above, after appellant subpoenaed Rose Pitts Williams for a deposition, appellees filed a Motion for a Protective Order, arguing that Williams had no information that was relevant to the case and that appellant was seeking to harass and embarrass her by taking her deposition. Appellant's counsel, in a response to appellee's motion, indicated that appellee Russell Pitts, at his deposition, had testified that a 1989 Olds Regency owned by his daughter, Rose, was offered to appellant and that the records of the Ohio Bureau of Motor Vehicles did not show that Rose owned such vehicle. Appellant's counsel argued, in part, that the fact that Rose never owned a 1989 Olds Regency during the pertinent period "seriously questions the veracity of [Russell] Pitts sworn testimony." The trial court then overruled appellees' motion for a protective order.
 {¶ 33} However, appellant's counsel, at the deposition of Rose Pitts Williams, questioned Williams about matters other than her residence and the ownership of the vehicle in question. Appellant's counsel questioned Williams about irrelevant matters including the identity of her child's father and his family and asked Williams for her child's father's telephone number and his place of work. In addition, Williams was questioned about personal matters including visitation and custody issues regarding her son, her child care arrangements, and where she did her banking, among other matters. While appellant's counsel notes that not every question asked at a deposition needs to be admissible, we find that the trial court did not abuse its discretion in holding that appellant's counsel used the deposition of Rose Pitts Williams to "harass her and badger her with irrelevant and inadmissible material." The trial court, at the October 26, 2004, hearing on the Motion for Sanctions, stated on the record that it had overruled appellees' Motion for a Protective Order and allowed appellant's counsel to take the deposition of Rose Pitts Williams so that appellant's counsel could ask "relevant questions about the vehicle" and based on appellant's counsel's representation that the deposition would last no more than twenty minutes.
 {¶ 34} From our review of the transcript of the nearly hour long deposition, it is clear that counsel's inquiries of Williams went far beyond the scope authorized by the trial court. As noted by the trial court in its January 19, 2005, Judgment Entry, "a review of the transcript of the deposition clearly indicates that almost all of the questions asked of Mr. Pitts' daughter had no relevance whatsoever with the issues in this case."
 {¶ 35} Based on the foregoing, we find that the trial court did not err in finding appellant's counsel used the deposition of Rose Pitts Williams to harass and badger her.
 {¶ 36} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 37} Appellant's counsel, in his third assignment of error, contends that the trial court erred in holding that appellant's counsel had a duty to ensure that a witness subpoenaed by opposing counsel attended her deposition. Appellant's counsel further maintains that the trial court erred in finding that his actions demonstrated that he knew such witness would not appear for deposition and that he did not plan on attending the deposition.
 {¶ 38} In the case sub judice, after Georgetta Kinnison identified her daughter, Michelle, as a witness, defense counsel, on February 3, 2004, sent a letter to appellant's counsel requesting Michelle's current address. Appellant's counsel responded pursuant to a letter dated February 26, 2004, in which he provided an address for Michelle Carter in Coal City, Illinois. The parties agreed that Michelle's deposition would take place on April 14, 2004, in Illinois. A subpoena was then issued to Michelle Carter.
 {¶ 39} Appellees' counsel, in an affidavit that was filed with the trial court on October 26, 2004, the date of the sanctions hearing, stated, in relevant part, as follows:
 {¶ 40} "11. Based on: (i) Mr. Winston's representation that "[t]he address for Michelle Carter is 807 Covey Lane, Apt. 2, Coal City, Illinois, 60416"; (ii) the subpoena being delivered in that name and address more than a week before the deposition; (iii) Mr. Winston's representations that Michelle would attend and that he planned to attend telephonically, and his failure to alert me of any foreseeable problems with her attendance or related to her name as it appeared on the service copy he received; and (iv) the fact that Michelle had not refused the certified mail containing the subpoena, I reasonably believed that Michelle knew of the deposition, had received the subpoena confirming it, and would attend.
 {¶ 41} "12. According, on April 13, 2004, I flew to Chicago, Illinois for Michelle's April 14th deposition.
 {¶ 42} "13. I spent the night in a hotel and rented a car the next morning to drive the hour and thirty minutes to Morris, Illinois for the deposition.
 {¶ 43} "14. Before leaving the hotel, I phoned Mr. Winston to see how he had arranged to participate by telephone as indicated.
 {¶ 44} "15. Mr. Winston stated that he still planned to attend the deposition telephonically, and that he had not yet made the appropriate arrangements with the hotel at which the deposition was being taken, I fond that odd, and I gave him the hotel's phone number to make sure that he had the correct number.
 {¶ 45} "16. Nonetheless, neither Michelle nor Mr. Winston appeared for the deposition. . . .
 {¶ 46} "17. I attempted to call Mr. Winston during the full hour that I waited for Michelle to appear and for him to call in, but was informed by his secretary that he was out of the office and she did not expect him to return for a while.
 {¶ 47} "18. I inquired with the hotel at which the deposition was to be held about whether Mr. Winston had arranged to be added to the deposition telephonically. I was informed that no such arrangements had ever been requested or made.
 {¶ 48} "19. Later that afternoon, I finally reached Mr. Winston. He told me that he had just returned from a round of golf. I was shocked that he had scheduled a golf game for the time that he and I had agreed for Michelle's deposition. Then, Mr. Winston stated, for the very first time, that there were some `issues' with the way the subpoena was served — namely, that Michelle's last name was `Davis,' not `Carter' — and that he knew of those issues well before I made the trip to Illinois.
 {¶ 49} "20. Mr. Winston further stated that: (i) it was his `fault' that the subpoena went addressed to Michelle `Carter' rather than to Michelle `Davis', (ii) he had discussions a week or so before April 14 with Plaintiff about Michelle's receipt of the subpoena; and (iii) during those discussions he learned that Michelle probably would not appear for her deposition in light of, among other reasons, she was scared because of her past legal troubles.
 {¶ 50} "21. Mr. Winston had not communicated any of that information to me before. . . ."
 {¶ 51} Appellant's counsel, at the sanctions hearing and in an affidavit filed with the trial court, indicated to the trial court that he had attempted to participate in the deposition by phone and was told by the hotel that there was no phone in the conference room. He further denied being on the golf course the day of the deposition.
 {¶ 52} Regardless of whether appellant's counsel had a duty to ensure that Michelle was present for her deposition, we find that there is evidence from which the trial court could have concluded that appellant's counsel knew Michelle would not be appearing for her deposition, but let opposing counsel fly to Illinois and incur needless expenses. The issue of credibility of the two opposing attorneys is one for the trial court.
 {¶ 53} In short, we find that there was competent, credible evidence supporting the trial court's conclusion that appellant's counsel had engaged in frivolous conduct in connection with Michelle's deposition. There is evidence that appellant's counsel provided an incorrect name for the witness to be deposed and then let opposing counsel fly to Illinois to conduct a deposition that he knew was most likely not to take place.
 {¶ 54} Based on the foregoing, appellant's third assignment of error is overruled.
 {¶ 55} Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.
Edwards, J. Boggins, P.J. concurs Hoffman, J. concurs separately.
[1] The deposition was of plaintiff's daughter.
[2] While the brief identifies Georgetta Kinnison as the appellant, her counsel, Douglas Winston, is actually the one appealing since sanctions were imposed upon him.
[3] We note that the trial court did not impose monetary sanctions on appellant's counsel for his actions with respect to making audio recordings of the depositions. The trial court noted that his conduct "had no other adverse effect upon defendants and their attorneys" other than causing them anxiety and frustration.
[4] At the October 26, 2004, sanction hearing, the trial court indicated on the record that it had overruled appellee's motion for a protective order "on the basis that you [appellant's counsel] go there and ask her relevant questions about the vehicle. You told me that's what you would ask and you said it would last 20 minutes at the most." Transcript at 39.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant.